**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE DELTA DENTAL ANTITRUST LITIGATION | **CIVIL ACTION NO.** |
| | 1:19-CV-06734 |
| | |
| *This document relates to: ALL ACTIONS* | **MDL NO.** 2931 |
| | Hon. Elaine E. Bucklo |

**AGREED ORDER REGARDING PRODUCTION OF ELECTRONICALLY**
**STORED INFORMATION AND PAPER DOCUMENTS**

Pursuant to Paragraph C of the Court's Scheduling Order dated September 11, 2020 (Doc. No. 306), the Parties, through their respective counsel of record, hereby stipulate to this Protocol Regarding Production of Electronically Stored Information and Paper Documents ("ESI Protocol"); accordingly, it is ORDERED:

A. **Definitions**

1. "Electronically stored information" or "ESI" shall include all electronic files, documents, data, and information covered under the Federal Rules of Civil Procedure.

2. "Producing Party" shall refer to the Party or non-party producing documents or ESI.

3. "Receiving Party" shall refer to a Party receiving documents or ESI.

4. "Requesting Party" shall refer to a Party that requested the documents or ESI that is the subject of this protocol.

1

**B.     Identification of Not Reasonably Accessible or Destroyed Documents**

1.     Absent an Order from the Court upon a showing of good cause, a Party or non-party from whom ESI has been requested shall not be required to search for responsive ESI from sources that are not reasonably accessible without undue burden or cost. If a Producing Party asserts that certain categories of ESI that are reasonably likely to contain responsive information are inaccessible, or if the Requesting Party asserts that, following production, certain ESI is not reasonably usable, the Parties shall meet and confer to discuss resolving such assertions. If the Parties cannot resolve any such disputes after such a meet and confer has taken place, the issue shall be presented to the Court for resolution. The following types of data stores are presumed to be inaccessible and are not subject to discovery, and need not be collected or preserved, absent a particularized need for the data as established by the facts and legal issues of the case:

a.     Deleted, slack, fragmented, or other data only accessible by forensics;

b.     Random access memory (RAM), temporary files, or other ephemeral data that is difficult to preserve without disabling the operating system;

c.     On-line access data such as temporary internet files, history, cache, cookies, and the like;

d.     Back-up data that is substantially duplicative of data that is more accessible elsewhere;

    e.      Server, system, or network logs; and

    f.      Data remaining from systems no longer in use that intelligible on the systems in use.

2.      To conduct collections in a focused and efficient manner, the Parties also agree to exclude the following file types from collection and/or production:

    a.      Standard system file extensions including, but not limited to, BIN, CAB, CHK, CLASS, COD, COM, DLL DRV, INF, INI, JAVA, LIB, and SYS; and

    b.      Files identified by hash value when compared to the National Software Reference Library reference data set (RDS Hash), a sub-project of the National Institute of Standards and Technology ("NIST"), of known traceable system and application files. This process is commonly referred to as "De-NISTing."

    c.      Any files that are less than 1,000 bytes in size with the following file extensions: .jpeg, .gif, .png, .jpg, and .bmp that are attached to emails.

## C.    Format of Documents Produced

1.      Except for structured data, all production images will be provided as a black-and-white, single-page Group IV TIFF of at least 300 DPI resolution with corresponding multi-page text and necessary load files. Each image will have a file name that is the unique "Bates" or document control number of that image, pursuant to ¶ C.5. Original document

orientation should be maintained to the extent reasonably practicable and technologically possible for a Producing Party's vendor (i.e., portrait to portrait and landscape to landscape). The imaged Data shall retain all attributes of the native or hard-copy file, such as document breaks. Produced TIFF images will show all text and images that are visible in the form in which the electronic document was last saved, with the exception of redacted portions. Hidden content, tracked changes or edits, comments, notes, and other similar information, to the extent viewable within a document in its native file format shall also be imaged so that such content is viewable on the image file. Documents that are difficult to render in TIFF because of technical issues, or any other documents that are impracticable to render in TIFF format, may be produced in their native format with a placeholder TIFF image stating "Document Produced Natively." A Producing Party retains the option to produce ESI in alternative formats if so agreed by the Requesting Party, which may include native format, or a combination of native and TIFF formats.

2. Documents or ESI containing color need not be produced initially in color. However, if an original document or ESI item contains color markings and it is necessary to see those markings in their original color to understand the meaning or content of the document, then the Requesting Party may, in good faith, request that the document or ESI item be produced in its original colors. For such documents, the Requesting Party shall provide a list of Bates numbers of the imaged documents sought to be produced in

color.  The production of documents and/or ESI in color shall be made in single-page JPEG format (300 DPI). All requirements for productions stated in this ESI Protocol regarding productions in TIFF format apply to any productions of documents and/or ESI in color made in such an alternative format.  Requests that a document be produced in color for the reasons set forth in this paragraph will not be unreasonably denied by the Producing Party. If a Producing Party wishes to object, it may do so by responding in writing and setting forth its objection(s) to the production of the requested document in color.

3.    All production items will be provided with a delimited data file or "load file," which will include both an image cross-reference load file (such as an Opticon file) as well as a metadata (.dat) file with the metadata fields identified below on the document level to the extent available.  The load file must reference each TIFF in the corresponding production. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load files in the production. The name of the image load file should mirror the name of the delivery volume, and should have the appropriate extension (e.g., ABC001.DAT). The volume names should be consecutive (i.e., ABC001, ABC002, et. seq.). There should be one row in the load file per TIFF image. Every image in the delivery volume should be contained in the image load file. The image key should be named the same as the Bates number of the page. Load files should not span across media (e.g., CDs,

DVDs, Hard Drives, Etc.), i.e., a separate volume should be created for each piece of media delivered. The data load file (i.e., the .DAT file) should use standard Concordance delimiters: Comma - ¶ (ASCII 20); Quote - þ (ASCII 254); and Newline - ® (ASCII174). The first record should contain the field names in the order of the data. All date fields should be produced in mm/dd/yyyy format. Use carriage-return line-feed to indicate the start of the next record. Load files should not span across media (e.g., CDs, DVDs, Hard Drives, etc.); a separate volume should be created for each piece of media delivered. The name of the data load file should mirror the name of the delivery volume, and should have a .DAT extension (i.e., ABC001.DAT). The volume names should be consecutive to the extent possible (i.e., ABC001, ABC002, et. seq.). If Foreign Language / Unicode text exists, DAT file shall be in appropriate UTF-8 or UTF-16 format. Load files should not be split across volumes regardless of delivery media.

4.      The files shall be accompanied by a .DAT text file including the delimited fields identified in Rider A. Except as specified in this Protocol, no Party will have any obligation to manually generate information to provide the fields identified in Rider A.

5.      The following information shall be produced in the load file accompanying production of paper documents: (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, (f) Confidentiality, and (g) Redacted (Y/N) or otherwise indicating that a

redaction is present. Additionally, all paper documents will be produced with a coding field named "Record Type" with "Paper" in it or something indicating that the document originated in paper form, and such indication shall be explained to the Requesting Party.

6. For any documents that were scanned from hard copy paper documents, the Parties will produce images of hard copy documents unitized to the extent the original documents appeared to be units in physical form, with attachments following parents, and with information that identifies the holder (or container) structure, to the extent such structure exists. Distinct documents should not be merged into a single file. The Parties will endeavor to generate accurate OCR and will utilize quality OCR processes and technology.

7. For ESI that the Producing Party produces in TIFF or JPEG format, the Producing Party shall electronically "burn" a legible, unique Bates number onto each page. The Bates number shall: (1) identify the Producing Party; (2) maintain a constant length of nine numeric digits (including 0-padding) across the entire production; (3) contain only alphanumeric characters, no special characters or embedded spaces; and (4) be sequential within a given document. If the Bates number conceals, interferes with, or otherwise obscures any information from the source document, the Producing Party, at the request of a Receiving Party, shall produce a copy that is not obscured.

8.  For ESI that the Producing Party produces in TIFF format, if the Producing Party is producing the ESI subject to a claim that it is protected from disclosure under any confidentiality order entered in this matter, the Producing Party shall electronically "burn" the appropriate confidentiality designation onto each page of the document. If the designation conceals, interferes with, or otherwise obscures any information from the source document, the Producing Party, at the request of a Receiving Party, shall produce a copy that is not obscured.

9.  The Parties agree to produce e-mail families intact absent a privilege or work product claim. For all documents that contain a non-privileged attachment, the following fields will be produced (if available) as part of the metadata load file to indicate the parent child or parent/sibling relationship:

    a.  Production Bates begin

    b.  Production Bates end

    c.  Production Bates begin attachment

    d.  Production Bates end attachment

10. Unless otherwise agreed, all dynamic date and time fields, where such fields are processed to contain a value, and all metadata pertaining to dates and times, will be standardized to Universal Coordinated Time (UTC) or Universal Coordinated Time + 1 (UTC+1). The Parties understand and acknowledge that such standardization affects only dynamic fields and metadata values and does not affect, among other things, dates and times

that are hard-coded text within a file. Dates and times that are hard-coded text within a file (for example, in an email thread, dates and times of earlier messages that were converted to body text when subsequently replied to or forwarded; and in any file type, dates and times that are typed as such by users) will be produced as part of the document text in accordance with the provisions herein.

11.     Notwithstanding the foregoing, for documents that were previously produced in another litigation, the Producing Party may reproduce those documents in the same manner and format in which they were originally produced.

**D.     Exceptions to the Production Format**

1.     The Parties agree that ESI shall be produced as TIFF images consistent with the format described in this Protocol. The exception to this rule shall be the following:

a.     Presentation files (e.g. MS Powerpoint) shall also be produced both with TIFFs and its associated native file; and

b.     Spreadsheet-application files (e.g., MS Excel), personal databases (e.g., MS Access), and multimedia audio/visual files such as voice and video recordings (e.g., .wav, .mpeg, and .avi), for which all ESI items shall be produced in only in native format.  In the case of personal database (e.g., MS Access) files containing confidential or privileged information, the Parties shall meet and confer to determine the appropriate form of production. When

producing the above file types in native format, the producing Party shall produce a single-page TIFF slip sheet indicating that a native item was produced bearing that item's Bates number and confidentiality designation. The corresponding load file shall include NativeFileLink information for each native file that is produced. Further, the Parties agree to meet and confer prior to producing native file types other than spreadsheet application files, presentation files, and multimedia audio/visual file types such as .wav, .mpeg and .avi. Prior to processing non-standard native files for production, the Producing Party shall disclose the file type to and meet and confer with the requesting Party on a reasonably useable production format. The Parties agree to meet and confer to the extent that there is data in database application files, such as SQL, to determine a reasonable form of production of usable data.

2.     Other than as specifically set forth above, a producing Party need not produce documents in native format. If a Party would like a particular document produced in native format and this ESI Protocol does not require the production of that document in its native format, the Party making such a request shall explain the reason for its request that the document be produced in its native format. The Requesting Party will provide a specific Bates range for documents it wishes to be produced in native format. Any native files that are produced should be produced with

10

a link in the NativeLink field, along with all extracted text and applicable metadata fields set forth in Rider 1.

3.  Through the pendency of the Litigation, the Producing Party shall exercise reasonable, good faith efforts to maintain all preserved and produced native files in a manner that does not materially alter or modify the file or the metadata. However, nothing in this Order shall prevent a Party from updating or modifying documents, spreadsheets, or databases that are regularly updated in the regular course of business.

**E.    De-Duplication**

1.  To the extent consistent with the below subparts, the producing Party need only produce a single copy of a particular electronic Document.

    a.  **Vertical De-Duplication**. A Producing Party may de-duplicate ESI vertically by custodian, provided however, that an email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include identical content in the BCC or other blind copy field, even if all remaining content in the email is identical.

    b.  **Horizontal De-Duplication.** A producing Party may de-duplicate ESI horizontally (globally) across the population of records, if the Producing Party discloses to the requesting Party that it has deduplicated horizontally, and provided further that: (a) an email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content

in the BCC or other blind copy field, even if all remaining content in the email is identical; and (b) all custodians who were in possession of a de-duplicated document must be identified in the Global Custodian field. To ensure accuracy, the Global Custodian fields must be captured by an automated process and cannot be populated using a manual process. In the event of a rolling production of documents or ESI items, the producing Party shall provide an overlay load file with updated Global Custodian fields when the Producing Party substantially completes its document production. The metadata overlay may contain a full refresh of data for the Global Custodian fields or be a supplement to the information previously provided for the fields. At the time of production, the producing Party shall identify the overlay as a full refresh overlay or a supplemental overlay.

c.  Duplicate electronic documents shall be identified by a commercially accepted industry standard (e.g., MD5 or SHA-1 hash values) for binary file content. All electronic documents bearing an identical value are a duplicate group. Any other methodology for identification of duplicates, including email field selection for hash value creation, must be discussed with the Requesting Party and approved in writing before implementation.

d.  Duplicate messaging files shall be identified by a commercially accepted industry standard (e.g., MD5 hash values) for the email

family, which includes the parent and email attachments. Duplicate messaging materials will be identified at a family level, including message and attachments. Email families bearing an identical value are considered a duplicate group. The producing Party shall use reasonable efforts to produce only one document image or native file for duplicate emails within the duplicate group to the extent practicable.

**F.  Email Threads**

1.  Email threads are email communications that contain prior or lesser included email communications. A most inclusive email thread is one that contains all of the prior or lesser included emails and attachments including each branch of the email thread. A producing Party may use email thread suppression to exclude email from production, provided however, that an email that includes an attachment or content in the BCC or other blind copy field shall not be treated as a lesser included version of an email that does not include the attachment or content, even if all remaining content in the email is identical. The Parties may use email thread suppression to avoid review and production of information contained within an existing email thread in another document being reviewed and produced, but under no circumstances will email thread suppression eliminate (a) the ability of a Requesting Party to identify every custodian who had a copy of a produced document or email, (b) remove from a production any unique branches and/or attachments

contained within an email thread, or (c) the ability of a Requesting Party to identify the date, recipients, and senders of each lesser included email.

**G.    Issues Related to Privilege and Redaction**

1.    If a Party withholds a document otherwise discoverable by claiming that it is privileged, that Party shall produce a privilege log with Rule 26(b)(5)(A) of the Federal Rules of Civil Procedure, and any applicable local rule or procedure.

2.    The privilege log must be detailed enough to enable other parties to assess the applicability of the privilege asserted and should include: (1) the name of each individual from whom or to whom a document and any attachments were sent; (2) the date of the document and any attachments; (3) the document extension (e.g., *.msg, *.pptx, etc.) or document type where such extension is absent; (4) the Bates numbers of the documents; (5) the nature of the privilege asserted; (6) a description of the subject matter of the document or redacted portion of the document in sufficient detail to determine if legal advice was sought or revealed, or if the document constitutes work product.

3.    Should a Receiving Party, in good faith, have reason to believe a particular entry or category of entries on a privilege log or its associated document does not reflect privileged information, or that the entry does not provide sufficient information to assess any such claim of privilege, the Receiving Party may request additional information, and the Producing Party will not unreasonably refuse to provide more information about the basis of the

14

asserted privilege in compliance with Fed. R. Civ. P. 26(b)(5). Should a Receiving Party, in good faith, have reason to believe a particular redaction or withheld document is responsive and does not reflect privileged or protected discoverable information after the Producing Party has provided the additional information, the Receiving Party shall provide (i) the Producing Party with its justification for believing the redaction or withheld Document may be responsive and not privileged or protected, and (ii) the Producing Party an opportunity to re-consider its assertion of privilege or protection on the redaction or Document. The Parties shall meet and confer to try to reach a mutually agreeable solution. If they cannot agree, the matter may be brought to the Court. So long as one copy of a document is logged under Rule 26(b)(5)(A), identical duplicates of that document need not be logged, provided that the document control number of the identical duplicates are provided in the privilege log.

4.   Where the Producing Party asserts that the entirety of a chain of e-mails is privileged and an attorney did not receive every email in the chain, the Producing Party may support its claim for privilege by including a single log entry for the entire e-mail chain, if a redacted version of the email is produced. Where the Producing Party asserts that the entirety of a chain of e-mails is privileged and an attorney did receive every email in the chain, the Producing Party may support its claim for privilege by including a single log entry for the entire chain without producing a redacted version of the email as long as a field is included in the log that sets forth each

recipient of any of the emails within the chain. The terms of this Paragraph is not intended to prejudice a Receiving Party's right to seek additional information under the terms of this Protocol where any such single entry is deemed insufficient to support the claim of privilege.

5. <u>Exclusions from Logging Potentially Privileged Documents</u>: The following categories of Documents need not be reflected in a Producing Party's privilege log, unless good cause exists to require that a Party do so or the Parties otherwise agree.

   a. Communications after the filing of the initial complaint in this litigation, exclusively between a producing Party and its corporate in-house and/or outside counsel regarding this litigation.

   b. Any privileged materials or work product created by or specifically at the direction of a Producing Party's outside counsel, an agent of outside counsel other than the Producing Party, any non-testifying consultants or experts in anticipation of or in connection with this litigation, or with respect to information protected by Fed. R. Civ. P. 26(b)(4), testifying experts in connection with this litigation.

6. Redacted documents must be logged with all information specified in Paragraph G.2. that is not discernable on the face of the produced version of the document. For all such documents, the information specified in Paragraph G.2.5 and G.2.6 must be provided.

7. Notwithstanding the foregoing, for withheld documents that were included on a privilege log that was provided in another litigation, the Producing

16

Party may satisfy its obligation to provide a privilege log by providing that previously-provided privilege log upon a showing that the previously-provided log is sufficient under Fed. R. Civ. P. 26(b)(5) and any local rule or procedure applicable to this litigation or unless otherwise agreed by the Requesting Party.

**H.    Other Production Issues**

1.    The Parties and non-parties shall produce the metadata specified in Rider A for electronic documents. The Parties are not obligated to manually populate any of the fields in Rider A if such fields cannot reasonably be extracted from the document using an automated process, with the exception of the following fields:   (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, (f) Confidentiality, (g) Redacted (Y/N), and (h) NativeLink fields, which should be populated regardless of whether the fields can be populated pursuant to an automated process.

2.    No Party may request or seek to compel the production of ESI in native format on a wholesale basis, although the Producing Party retains the option to produce ESI in native file format. Subsequent to the production of the imaged documents, however, and according to the following protocol, a Receiving Party may, for good cause, request from a Producing Party that individual imaged files be produced in native format if the imaged files are unreadable or illegible. In that circumstance:

a.    The Receiving Party shall provide a list of Bates numbers of the imaged documents sought to be produced in native file format.

b.     The Producing Party shall have a reasonable time to produce the native files, or respond in writing why it will not produce the requested files.

c.     Any produced native file will be named according to the first Bates number of the corresponding electronic document (*e.g.*, [Production Number Begin].xlsx).

3.     Productions may be delivered to the Receiving Party on digital media or via a secure internet transfer tool (such as a SFTP site, ShareFile). Each production will be labeled with the Bates range contained therein and a volume number if appropriate.

4.     To maximize the security of information in transit, any media on which documents are produced may be encrypted by the Producing Party. In such cases, the Producing Party shall transmit the encryption key or password to the Requesting Party, under separate cover, contemporaneously with sending the encrypted media. The Receiving Parties agree to follow the strictest security standards in guarding access to said data.

## I.    Production Format Shall Not Alter Authenticity, Admissibility, or Privilege Status

1.     No Party shall object that ESI produced pursuant to this Protocol is not authentic by virtue of the ESI having been converted to TIFF. The Parties otherwise reserve all rights regarding their ability to object to the authenticity of documents.

18

2.      Nothing in this Protocol shall be construed to affect in any way the rights of any Party to make any objection as to the production, discoverability, admissibility, or confidentiality of documents and ESI.

3.      Nothing in this Protocol shall constitute a waiver by any Party of any claim or privilege or other protection from discovery.

4.      Nothing in this Protocol shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity, nor shall it be interpreted to authorize the withholding of any portion of a relevant document on any ground other than a recognized privilege, work-product doctrine, or immunity.

**J.      Confidentiality**

1.      For the avoidance of doubt, nothing in this Protocol shall supersede or alter any discovery confidentiality order and/or protective order concerning the protection of confidential or otherwise sensitive information that may be entered by the Court.

**K.      Application of Other Rules**

1.      This Protocol is not intended to displace Federal Rule 34 or any other applicable Federal Rule of Civil Procedure or Local Civil Rule for the Northern District of Illinois.

2.      Any practice or procedure set forth herein may be varied by agreement of the Parties without order of the Court.  Failure of the Parties to agree on any modifications may be raised with the Court as necessary and in

accordance with the Federal Rules of Civil Procedure and the Local Civil Rules.

It is so **ORDERED.**

Dated: _____

                                                                       _____

THE HONORABLE ELAINE E. BUCKLO

**SO STIPULATED.**

Dated:  September 30, 2020                     Respectfully submitted,

**QUINN EMANUEL URQUHART &**          **WOLLMUTH MAHER & DEUTSCH LLP**
**SULLIVAN, LLP**

By:   */s/ Stephen R. Neuwirth*                 By:   */s/ Ronald J. Aranoff*
Stephen R. Neuwirth                            Ronald J. Aranoff
Toby E. Futter                                 Cassandra Postighone
Joseph Kiefer                                  500 Fifth Avenue – 12th Floor
51 Madison Avenue, 22nd Floor                  New York, New York  10110
New York, New York  10010                      Telephone: (212) 382-3300
Telephone:  212 849-7000                        raranoff@wmd-law.com
stephenneuwirth@quinnemanuel.com                cpostinghone@wmd-law.com
tobyfutter@quinnemanuel.com
joekiefer@quinnemanuel.com                     *Interim Co-Lead Class Counsel*

Leonid Feller, P.C.
Athena Dalton
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
Telephone: (312) 705-7400
leonidfeller@quinnemanuel.com
athenadalton@quinnemanuel.com

*Interim Co-Lead Class Counsel*

**KAPLAN FOX & KILSHEIMER LLP**
Robert N. Kaplan
Gregory Arenson
Elana Katcher
850 Third Avenue
New York, New York 10022
Telephone: (212) 687-1980
rkaplan@kaplanfox.com
garenson@kaplanfox.com
ekatcher@kaplanfox.com

*Chair, Plaintiffs' Interim Executive*
*Committee*

/s/ Kathy L. Osborn
Kathy L. Osborn
Ryan M. Hurley
Anna Marie Behrmann
FAEGRE DRINKER BIDDLE & REATH LLP
300 N. Meridian St., Suite 2500
Indianapolis, IN 46204
(317) 237-8261
kathy.osborn@faegredrinker.com
ryan.hurley@faegredrinker.com
anna.behrmann@faegredrinker.com

Colby Anne Kingsbury
FAEGRE DRINKER BIDDLE & REATH LLP
311 S. Wacker Dr., #4400
Chicago, IL 60606
(312) 212-6573
colby.kingsbury@faegredrinker.com

Jeffrey S. Roberts
Joshua P. Mahoney
FAEGRE DRINKER BIDDLE & REATH LLP
1144 15th Street, Suite 3400
Denver, CO 80203
(303) 607-3500
jeff.roberts@faegredrinker.com
joshua.mahoney@faegredrinker.com

*Counsel for Defendants Delta Plan of Arkansas, Inc., Delta Dental of Indiana, Inc., Delta Dental of Kentucky, Inc., Delta Dental Plan of Michigan, Inc., Delta Dental Plan of New Mexico, Inc., Delta Dental of North Carolina, Delta Dental Plan of Ohio, Inc., and Delta Dental of Tennessee*

/s/ Benjamin W. Hulse
Jerry W. Blackwell
Benjamin W. Hulse
Gerardo Alcazar
BLACKWELL BURKE P.A.
431 South Seventh Street
Suite 2500
Minneapolis, MN 55415
612-343-3200
blackwell@blackwellburke.com
bhulse@blackwellburke.com

/s/ Britt M. Miller
Britt M. Miller
Daniel K. Storino
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
bmiller@mayerbrown.com
dstorino@mayerbrown.com

Mark W. Ryan
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000
mryan@mayerbrown.com

*Counsel for Defendants Delta Dental Plans Association, DeltaUSA, Delta Dental of Connecticut Inc., Delta Dental Plan of Idaho, Inc. d/b/a Delta Dental of Idaho, Dental Service of Massachusetts, Inc. d/b/a Delta Dental of Massachusetts, Delta Dental of Missouri, Delta Dental of New Jersey, Inc., Oregon Dental Service d/b/a Delta Dental of Oregon, Delta Dental of Washington, and Delta Dental Plan of Wyoming d/b/a Delta Dental of Wyoming*

/s/ Howard Ullman
Stephen V. Bomse
Russell P. Cohen
Howard Ullman
Nicole Gelsomini
ORRICK HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
415-773-5700
sbomse@orrick.com
rcohen@orrick.com
hullman@orrick.com

galcazar@blackwellburke.com

Lori Swanson
Mike Hatch
SWANSON HATCH, P.A.
431 South 7th Street
Suite 2545
Minneapolis, MN 55415
612-315-3037
lswanson@swansonhatch.com
mhatch@swansonhatch.com

*Counsel for Defendants Delta Dental of*
*Minnesota and Delta Dental of Nebraska*

/s/ David E. Dahlquist
David E. Dahlquist
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
312-558-5600
ddahlquist@winston.com

*Counsel for Defendants Arizona Dental Insurance*
*Service, Inc. d/b/a Delta Dental of Arizona,*
*Hawaii Dental Service, Delta Dental of Iowa,*
*Delta Dental of Kansas Inc., Maine Dental*
*Service Corporation d/b/a Delta Dental Plan of*
*Maine, Delta Dental Plan of New Hampshire,*
*Inc., Delta Dental Plan of Oklahoma, Delta*
*Dental of Rhode Island, Delta Dental of South*
*Dakota, and Delta Dental Plan of Vermont, Inc.*

/s/ Allison W. Reimann
Allison W. Reimann
GODFREY & KAHN, S.C.
One East Main Street
Suite 500
Madison, WI 53703
608-257-3911
areimann@gklaw.com

*Counsel for Defendant Delta Dental of*
*Wisconsin, Inc.*

Emily Luken
ORRICK HERRINGTON & SUTCLIFFE LLP
Columbia Center
1152 15th Street, N.W.
Washington, D.C. 20005
202-339-8400
eluken@orrick.com

Brian Joseph Murray
Timothy D. Elliot
RATHJE WOODWARD LLC
300 E. Roosevelt Road
Suite 300
630-668-8500
Wheaton, IL 60187
bmurray@rathjewoodward.com
telliott@rathjewoodward.com

*Counsel for Defendants Delta Dental*
*Insurance Company, Delta Dental of*
*California, Delta Dental of Delaware, Delta*
*Dental of the District of Columbia, Delta*
*Dental of New York, Delta Dental of*
*Pennsylvania, Delta Dental of Puerto Rico,*
*and Delta Dental of West Virginia*

/s/ Scott D. Stein
Scott D. Stein
Colleen M. Kenney
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000
sstein@sidley.com
ckenney@sidley.com

*Counsel for Defendants Colorado Dental*
*Service, Inc. d/b/a Delta Dental of*
*Colorado, Delta Dental of Illinois, and*
*Delta Dental of Virginia*

3

## RIDER A[1]

| File Name | Field Description | Sample Values |
|---|---|---|
| BegBates | Bates number for the first page of the document | ABC-0000001 |
| EndBates | Bates number for the last page of the document | ABC-0000002 |
| BegAttach | Bates number for the first page of parent document | ABC-0000001 |
| EndAttach | Bates number for the last page of last attachment | ABC-0000005 |
| Pages | Number of printed pages of the document | 2 |
| Custodian | Custodian name produced in format: Lastname, Firstname. | |
| Global Custodian | Custodian name produced in format: Lastname, Firstname. | Smith, Jane; Taylor, Michael |
| Confidentiality | Indicates if the document has been designated as "Confidential" pursuant to any applicable Protective Order | Confidential |
| Redacted | Descriptor for documents that have been redacted. "Yes" for redacted documents; "No" for non-redacted documents | Yes |
| Email Subject | Subject line of Email | Text of the subject line |
| Document Subject | Subject value of documents | Text of the subject line |
| Date Sent | Date email sent | mm/dd/yyyy |
| Time Sent | Time email sent | hh:mm:ss AM |
| Date Last Modified | Date document was last modified | mm/dd/yyyy |

---

[1] Field Names can vary from system to system and even between different versions of systems. Thus, Parties are to be guided by these Field Names and Descriptions when identifying the metadata fields to be produced for a given document pursuant to this ESI Protocol.

4

| File Name | Field Description | Sample Values |
|---|---|---|
| Time Last Modified | Time document was last modified | hh:mm:ss AM |
| Date Created | Date document was first created | mm/dd/yyyy |
| To | All SMTP address of email recipients, separated by a semi-colon | Larry.murphy@email.com |
| From | All SMTP address of email author | Bart.cole@email.com |
| CC | All SMTP address of email "CC" recipients, separated by a semi-colon | Jim.James@gmail.com; bjones@yahoo.com |
| BCC | All SMTP address of email "BCC" recipients, separated by a semi-colon | mjones@gmail.com |
| AttachCnt | The number of attachments to an email | 3 |
| Attach | The file name(s) of the documents attached to emails or embedded in files. Multiple files should be delimited by a semicolon. | Filename.doc; filename2.doc |
| Title | The Title property of a file | Title |
| Author | The Author property of a file | John Doe |
| MessageID | The email message ID | |
| FILENAME | The original name of the file excluding the path | C:\My Documents\ letter.doc |
| DocType | Email, letter, memo, invoice, etc. if available | |
| Extension | The file extension | .doc |
| FileType | The actual file type of the document (Word, Excel, etc.) regardless of the file extension | |
| HashValue | MD5 Hash value of original file | |
| FilePath | The directory structure of the original file | C:\My Documents\ letter.doc |
| PathToNative | The relative path to a produced native document | C:\VOL001\BATES0000000 01.xls |
| PathToText | The relative path to the accompanying text file | C:\VOL001\BATES0000000 01.txt |

| File Name | Field Description | Sample Values |
|---|---|---|
| Volume | The production number or reference from the production | |
| Withheld Placeholder | To the extent a document is fully withheld (on the basis of privilege or otherwise), this field must be populated with a "Y" | |
| Privilege Asserted | To the extent a document has been withheld on the basis of privilege or redacted on the basis of privilege, the text pertaining to such assertion of privilege shall be included as a metadata field (e.g., "Redacted – Attorney Client Privileged" or "Withheld – Attorney Client Privileged") | |
| Record Type | The field describes the type of record: "Paper," "Email," "Attachment," or "electronic document." | |
| Legend/Confidentiality | Indicates if document has been designated as "Confidential," or "Highly Confidential" under the Protective Order. | |

6

## CERTIFICATE OF SERVICE

I, Stephen R. Neuwirth, an attorney, hereby certify that on September 30, 2020, I caused a copy of the foregoing Agreed Order to be filed and served electronically via the Court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.


DATED: September 30, 2020

*Stephen R. Neuwirth*
Stephen R. Neuwirth
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: 212 849-7000
E-Mail: stephenneuwirth@quinnemanuel.com

*Attorney for Plaintiffs*

7