## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE DELTA DENTAL ANTITRUST LITIGATION<br><br>*This document relates to: ALL ACTIONS* | **CIVIL ACTION NO.**<br><br>1:19-CV-06734<br><br>**MDL No. 2931**<br><br>Hon. Elaine E. Bucklo |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR A PROTECTIVE ORDER PURSUANT TO FED. R. CIV. P. 26(b) OR, IN THE ALTERNATIVE, MOTION TO QUASH PURSUANT TO FED. R. CIV. P. 45(d) REGARDING SUBPOENAS TO BEVERLY BANK AND JPMORGAN**

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

Leonid Feller, P.C.
Bevin Brennan
Tyler Murray
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
Telephone: (312) 705-7400
leonidfeller@quinnemanuel.com
athenadalton@quinnemanuel.com
*Interim Co-Lead Class Counsel*

**KAPLAN FOX & KILSHEIMER LLP**
Robert N. Kaplan
Gregory Arenson
Elana Katcher
850 Third Avenue
New York, New York 10022
Telephone: (212) 687-1980
rkaplan@kaplanfox.com
garenson@kaplanfox.com
ekatcher@kaplanfox.com
*Chair, Plaintiffs' Interim Executive Committee*

**WOLLMUTH MAHER & DEUTSCH LLP**

Ronald J. Aranoff
Nicole M. Clark
William J. Hagan
500 Fifth Avenue – 12th Floor
New York, New York 10110
Telephone: (212) 382-3300
raranoff@wmd-law.com
nclark@wmd-law.com
whagan@wmd-law.com
*Interim Co-Lead Class Counsel*

# TABLE OF CONTENTS

**Page**

I.      BACKGROUND ...................................................................................2

       A.    THE DELTA DENTAL DEFENDANTS ...................................2

       B.    DEFENDANTS' ANTICOMPETITIVE SCHEME..................2

             1.     The Territorial Market Allocation Mechanism..............................3

             2.     The Price-Fixing Mechanism.........................................................4

             3.     The Revenue-Restriction Mechanism ...........................................4

             4.     Defendants' Anticompetitive Conduct Has Resulted In Obscene Profits to Purported "Non-Profits."...................................................5

       C.    RELEVANT DOCUMENT REQUESTS AND RESPONSES............5

       D.    THE SUBPOENAS .....................................................................6

II.      ARGUMENT .......................................................................................7

       A.    A PROTECTIVE ORDER SHOULD BE ISSUED PRECLUDING THE PRODUCTION OF DOCUMENTS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(B)...................................................................7

       B.    IN THE ALTERNATIVE, THE SUBPOENAS SEEKING PLAINTIFFS' PRIVATE FINANCIAL INFORMATION SHOULD BE QUASHED UNDER FEDERAL RULE OF CIVIL PROCEDURE 45(D). ..............................9

       C.    DEFENDANTS SHOULD HAVE FIRST SOUGHT THIS INFORMATION FROM PLAINTIFFS, WHICH IS ANOTHER BASIS TO QUASH THE SUBPOENA...............................................................11

       D.    THE SUBPOENAS SHOULD BE QUASHED AS THEY ARE DESIGNED TO HARASS PLAINTIFFS. ............................................13

       E.    DEFENDANTS SERVED THE BEVERLY BANK SUBPOENA ON THE WRONG ENTITY. ...................................................................14

III.     LR 37.2 COMPLIANCE STATEMENT........................................................15

## **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Allstate Insurance Co. v. Electrolux Home Prods., Inc.*,
   No. 16-cv-4161, 2017 WL 5478297 (N.D. Ill. Nov. 15, 2017) ................................................ 9

*Bilek v. Nat'l Cong. of Emps., Inc.*,
   No. 18 C 3083, 2020 WL 10963975 (N.D. Ill. May 21, 2020) ............................................... 13

*In re Broiler Chicken Antitrust Litigation*,
   No. 16 C 8637, 2018 WL 3398141 (N.D. Ill. July 12, 2018) .................................................. 8

*Buonavolanto v. LG Chem., Ltd.*,
   No. 18 C 2802, 2019 WL 8301068 (N.D. Ill. Mar. 8, 2019) .................................................. 7

*Chung v. Tarom, S.A.*,
   990 F. Supp. 581 (N.D. Ill. 1998) ....................................................................................... 15

*Cohn v. Taco Bell Corp.*,
   147 F.R.D. 154 (N.D. Ill. 1993) .................................................................................... 13, 14

*DeLeon-Reyes v. Guevara*,
   Nos. 1:18-cv-01028 and 1:18-cv-02312, 2020 WL 3050230 (N.D. Ill. June 8, 2020) ............. 7

*In re Folding Carton Antitrust Litigation*:
   76 F.R.D. 420, 427 (N.D. Ill. 1977) ....................................................................................... 8

*Forde v. Arburg GmbH + Co KG*,
   No. 20-cv-02904, 2021 WL 148877 (N.D. Ill. Jan. 15, 2021) .......................................... 14-15

*Malibu Media, LLC v. Doe*,
   No. 13 C 8484, 2014 WL 1228383 (N.D. Ill. Mar. 24, 2014) ................................................ 9

*In re Plasma-Derivative Protein Therapies Antitrust Litigation*,
   Nos. 09 C 7666 and 11 C 1468, 2012 WL 1533221 ............................................................. 8

*PrimeSource Bldgs. Prods., Inc. v. Felten*,
   No. 16 CV 11468, 2018 WL 10425599 (N.D. Ill. Apr. 27, 2018) ......................................... 10

*Prince v. Kato*,
   No. 18-CV-2952, 2019 WL 10947351 (N.D. Ill. Sept. 19, 2019) ...................................... 9, 11

*Pursley v. City of Rockford*,
   No. 18 CV 50040, 2020 WL 1433827 (N.D. Ill. Mar. 24, 2020) ....................................... 8, 11

*Rossman v. EN Eng'g, LLC,*
    467 F. Supp. 3d 586 (N.D. Ill. 2020) ........................................................................ 13

*Signal Fin. Holdings LLC v. Looking Glass Fin. LLC,*
    No. 17 C 8816, 2021 WL 4935162 (N.D. Ill. Jun. 10, 2021) ................................... 13

*Simon v. Northwestern Univ.,*
    No. 15 CV 1433, 2017 WL 66818 (N.D. Ill. Jan. 6, 2017) ......................... 8, 10, 14

*In re Subpoena to Huawei Techs. Co., Ltd.,*
    720 F. Supp. 2d 969 (N.D. Ill. 2010) ....................................................................... 14

*Sunlust Pictures, LLC v. Does 1-75,*
    No. C 1546, 2012 WL 3717768 (N.D. Ill. Aug. 27, 2012) ...................................... 10

*Tresóna Multimedia, LLC v. Legg,*
    No. 15 C 4834, 2015 WL 4911093 (N.D. Ill. Aug. 17, 2015) ................................. 11

*Twyman v. S&M Auto Brokers,*
    No. 16 C 4182, 2016 WL 6082357 (N.D. Ill. Oct. 18, 2016) ................................. 10

*United States v. Ashman,*
    979 F.2d 469 (7th Cir. 1992) .................................................................................... 9

*United States v. Raineri,*
    670 F.2d 702 (7th Cir. 1982) .................................................................................... 9

## Rules and Regulations

Fed. R. Civ. P. 26(b) ..................................................................................... 1, 7, 9, 15

Fed. R. Civ. P. 45(d) ................................................................................... 1, 9, 11, 15

Plaintiffs Simon and Simon and Smile Design Studio hereby move for a protective order pursuant to Federal Rule of Civil Procedure 26(b) with respect to two irrelevant and grossly overbroad subpoenas served by Defendants on nonparties Beverly Bank & Trust Company, N.A. ("Beverly Bank") and JPMorgan Chase Bank, N.A. ("JPMorgan"). The subpoenas seek a broad swath of Plaintiffs' personal financial information, including Paycheck Protection Program ("PPP") loans, having nothing whatsoever to do with this case. In the alternative, Plaintiffs move to quash the subpoenas pursuant to Federal Rule of Civil Procedure 45(d).

This action concerns a conspiracy among horizontal competitors—the 39 Defendant dental insurance companies—who have established a buyers' cartel to impose anticompetitively low prices for the purchase of dental goods and services from dentists and dental groups. There is no reasonable basis for Defendants in this antitrust action to seek downstream financial information about these or any other Plaintiffs from banks, and certainly not the enormous volume of material called for by these subpoenas, including all documents and communications regarding "any accounts, investments, assets, loans, loan applications, or loan forgiveness programs" belonging to the plaintiffs, including but not limited to PPP loans issued during the COVID-19 pandemic. Plaintiffs' private financial information is irrelevant as a matter of law to whether Defendants violated the antitrust laws.

Many months ago, to try and avoid burdening the Court with an unnecessary dispute, Plaintiffs produced financial information sufficient to respond to Defendants' document requests. Yet without ever raising any purported deficiency with Plaintiffs, Defendants issued these subpoenas to third-party financial institutions seeking documents far broader than anything Defendants ever sought from Plaintiffs. Further, at least one of the subpoenas is defective because it is served on the wrong entity. A protective order should be granted, precluding the production

of these materials. Alternatively, the subpoenas should be quashed because they seek private financial information, are duplicative and cumulative, and are designed to harass these Plaintiffs.

## I. BACKGROUND

### A. THE DELTA DENTAL DEFENDANTS

Defendants are the Delta Dental Plans Association ("DDPA"), DeltaUSA, and the 39 state-level dental insurers licensed to use the Delta Dental name ("Delta Dental State Insurers" and, collectively with DDPA and DeltaUSA, "Delta Dental" or "Defendants"). (Consolidated Complaint ("CC") ¶¶ 22-63.) The 39 Delta Dental State Insurers comprise, fund, and manage DDPA. (*Id.* ¶ 22.) By agreement among Defendants, each Delta Dental State Insurer operates within an exclusive geographic territory that renders it free from competition by any other Delta Dental State Insurer. (*Id.* ¶¶ 93-99.) The overwhelming majority of all Dental Providers nationwide receive reimbursement from the Delta Dental State Insurers. (*Id.* ¶ 133.)

Plaintiffs are ten Dental Providers. (*Id.* ¶¶ 9-21.) Defendants, operating through Delta Dental, control tens of millions of insured dental patients in the United States, force Plaintiffs—and all the similarly-situated Dental Providers they seek to represent as a class—to accept Defendants' artificially low reimbursement rates for dental goods and services when treating patients insured by Delta Dental. (*Id.* ¶ 80.) Plaintiffs have been and continue to be injured by being forced to accept lower reimbursement rates from Defendants for goods and services provided to Delta Dental-insured patients than they would receive in a competitive market. (*Id.* ¶¶ 9-21.)

### B. DEFENDANTS' ANTICOMPETITIVE SCHEME

As detailed in the Consolidated Complaint, and as confirmed through millions of documents produced by Defendants and candid admissions made during the first set of depositions already completed in this case, Defendants have established a buyers' cartel that enables them artificially to suppress, below competitive levels, the price Defendants pay Plaintiffs and other

similarly-situated Dental Providers for dental goods and services. The Defendants have established and maintained this buyers' cartel through three interrelated means: a territorial market allocation mechanism, a price-fixing mechanism, and a "second-brand" revenue-restriction mechanism.

### 1. The Territorial Market Allocation Mechanism

Defendants have agreed not to compete and, instead, to divide the United States into 39 state or multi-state territories, within which each of the 39 Delta Dental State Insurers operate. (*Id.* ¶¶ 93-94.) Pursuant to this agreement, Delta Dental State Insurers do not sell or attempt to sell dental insurance to dental plan sponsors or members outside of the Delta Dental State Insurer's own allocated territory. ███████████████████████

███████████████████████████████████

███████████ Deponents have been unable to identify any *legitimate* purpose for this restriction.



### 2. The Price-Fixing Mechanism

Defendants also have secured and abused their monopsony power through a "Price-Fixing Mechanism," by which Defendants agree to impose artificially below-market reimbursement rates in each of their respective geographic territories. (*Id.* ¶¶ 1, 5, 100-101.)



### 3. The Revenue-Restriction Mechanism

Defendants also have agreed to restrict competition between any Delta Dental State Insurer and the "Delta Dental" brand. (*Id.* ¶¶ 1, 6, 106, 109, 119.) All Delta Dental State Insurers have the wherewithal to offer non-Delta-branded dental insurance to patients and non-Delta-branded reimbursement to Dental Providers. (*Id.* ¶ 108.) But the Delta Dental State Insurers agree to limit or forego the development of dental insurance under non-Delta Dental plans that would compete with Delta Dental plans. (*Id.*)

### 4. Defendants' Anticompetitive Conduct Has Resulted In Obscene Profits to Purported "Non-Profits."

Defendants can offer little factual defense to their anticompetitive conduct—it is largely undisputed. Instead, Defendants argue that the anticompetitive mechanisms are necessary to allow Delta Dental to compete with other national insurers, and that they pass on the "savings" to consumers. Even if true, this would make no difference given Defendants' *per se* violations of the antitrust laws. But discovery has already proven these defenses to be demonstrably false. Far from passing on savings to consumers, the Delta Dental State Insurers pay themselves obscene salaries, in excess of $14 million per year to their CEOs. (*See, e.g.,* Ex. G, DD-ENT-000205294 (Delta Dental of California's 2016 Form 990, reporting $14.3 million in total compensation for President/CEO Anthony Barth.) And even after paying such exorbitant salaries (as well as paying all claims and administrative expenses), ███████████████████████

████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

### C. RELEVANT DOCUMENT REQUESTS AND RESPONSES

Both Plaintiffs and Defendants have propounded a substantial number of document requests. As relevant to this motion, Defendants propounded Request for Production ("RFP") No. 53, which sought "Documents ***sufficient to show*** (a) any applications for support, financial relief, paycheck protection, loans, or loan forgiveness sought by You and/or Your dental practice, (b) the relief or support received, and (c) the entity that provided the relief or support." (*See* Ex. H, Defendants' First Set of Requests for Production of Documents Directed to Plaintiffs, Request No. 53, at 20 (dated Dec. 16, 2020).)

Plaintiffs specifically "object[ed] to this Request to the extent that it is harassing, overly broad, unduly burdensome, and seeks information that is not relevant, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case. Plaintiffs further object[ed] to this Request to the extent it seeks Plaintiffs' confidential, financial and/or proprietary information, the disclosure of which will or may cause irreparable harm to Plaintiffs." (*See* Ex. I, Responses and Objections of Plaintiffs to Defendants' First Set of Requests for Production of Documents, Response No. 53, at 42-43 (dated Feb. 15, 2021).)

During meet and confer efforts, Plaintiffs agreed—to avoid an unnecessary dispute—to produce basic financial information regarding their dental practices, including running appropriate search terms. But Plaintiffs did not, and would not, agree to produce **more** than RFP No. 53 requested—*i.e.*, documents "sufficient to show" loans taken by the dental practice.

In or about April 2022, Plaintiffs made their last major document production, confirming that their document productions were substantially complete. Until Plaintiffs objected to the instant subpoenas in January 2023, Defendants **never** claimed any deficiency with regard to Plaintiffs' productions in response to RFP No. 53.

### D.    THE SUBPOENAS

In late December 2022 and January 2023, counsel for eight of the Defendants[1] (the "Subpoenaing Defendants") served two subpoenas on JP Morgan and Beverly Bank, which provided loans to two Plaintiffs, Simon and Simon and Smile Design Studio, respectively.

---

[1]    Defendants Delta Plan of Arkansas, Inc., Delta Dental of Indiana, Inc., Delta Dental of Kentucky, Inc., Delta Dental Plan of Michigan, Inc., Delta Dental Plan of New Mexico, Inc., Delta Dental of North Carolina, Delta Dental Plan of Ohio, Inc., and Delta Dental of Tennessee issued a subpoena to Beverly Bank. Delta Dental of Wisconsin issued a subpoena to JPMorgan Chase Bank.

Each subpoena asks for the same information. The subpoenas have two requests, which seek all documents and communications relating in any way to any bank "accounts, investments, assets, loans, loan applications," including but not limited to PPP loans:

- ***All documents related to any services provided by You to [Plaintiff] relating to any accounts, investments, assets, loans, loan applications, or loan forgiveness programs***, including without limitation any Paycheck Protection Program loan ("PPP loan"), any loans sponsored or administered by the Small Business Administration ("SBA"), and any other COVID-19-related loans, loan applications, or loan forgiveness programs. This includes collateral pledged by [Plaintiff] to secure any PPP loan, the amount of the loan granted to [Plaintiff], the purpose of the loan in general terms, the maturity of the loan, the loan status (charged-off, paid in full, forgiven, etc.), all documents submitted by [Plaintiff] to the SBA in support of its application for any PPP loan, all documents relating to any subsequent loan applications made by [Plaintiff] to the SBA, and all other documents in Your possession, custody or control that relate to the SBA loan granted to [Plaintiff].

- All communications with [Plaintiff], any current or former employees of [Plaintiff], or any representatives, including attorneys, of [Plaintiff] or its employees relating to any accounts, investments, assets, loans, loan applications, or loan forgiveness programs, including without limitation any PPP loan, any loans sponsored or administered by the SBA, and any other COVID-19-related loans, loan applications, or loan forgiveness programs.

True and correct copies of the subpoenas are attached hereto as Exhibits J and K (emphasis added). Plaintiffs now move for a protective order regarding these subpoenas to preclude the banks from providing any documents in response to these subpoenas or to quash them entirely.

## II. ARGUMENT

### A. A PROTECTIVE ORDER SHOULD BE ISSUED PRECLUDING THE PRODUCTION OF DOCUMENTS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(b).

A party has "standing to seek a protective order under Rule 26 to limit discovery from a third party." *DeLeon-Reyes v. Guevara*, Nos. 1:18-cv-01028 and 1:18-cv-02312, 2020 WL 3050230, at *3 (N.D. Ill. June 8, 2020), citing *Buonavolanto v. LG Chem., Ltd.*, No. 18 C 2802, 2019 WL 8301068, at *2 (N.D. Ill. Mar. 8, 2019). "[T]he relevance and proportionality limits in Rule 26 that guide the proper scope of discovery apply with equal force to nonparty discovery

under Rule 45." *Id.* "Simply put, Rule 26(b)(1) limits discovery to matters that are relevant, proportional, and nonprivileged." *Id.* The Court has authority to preclude the requests in a subpoena where they "exceed[] the bounds of relevancy under Rule 26(b)(1)." *Id.* at *5.

Relevance is a threshold inquiry. *In re Broiler Chicken Antitrust Litigation*, No. 16 C 8637, 2018 WL 3398141, at *2 (N.D. Ill. July 12, 2018). Subpoenaing Defendants "must put forth some argument supporting the relevance of those" documents and communications. *Pursley v. City of Rockford*, No. 18 CV 50040, 2020 WL 1433827, at *4 (N.D. Ill. Mar. 24, 2020).

There is "zero evidence developed to date in this litigation" that would in any way justify these subpoenas. *Simon v. Northwestern Univ.*, No. 15 CV 1433, 2017 WL 66818, at *4 (N.D. Ill. Jan. 6, 2017). Subpoenaing Defendants cannot provide "a non-conjectured factual basis that the [documents and communications] contain relevant information." *Id.* Defendants' only rationale for seeking this financial information is that Plaintiffs somehow put the ongoing financial condition of their businesses directly at issue in this case. (Ex. L, Defendants' Letter to Plaintiffs (dated Jan. 11, 2023).)

There is no relevance whatsoever to the subpoenas issued to Beverly Bank or JP Morgan. A "plethora" of caselaw establishes that discovery into a plaintiff's downstream data and financial information is not permitted in an antitrust case. *See In re Plasma-Derivative Protein Therapies Antitrust Litigation*, Nos. 09 C 7666 and 11 C 1468, 2012 WL 1533221, at *3 (N.D. Ill. Apr. 27, 2012). There is a "long-held precedent of proscribing downstream discovery in antitrust litigation." *Id.* Defendants' actions are at issue, not Plaintiffs' finances. "The antitrust laws do not require that those seeking to enforce them have any particular financial condition." *In re Folding Carton Antitrust Litigation*: 76 F.R.D. 420, 427 (N.D. Ill. 1977). Nothing about Plaintiffs' financial information—much less PPP loans taken during the COVID-19 pandemic— is relevant.

The history of the PPP loan program confirms their lack of relevance to this case. COVID-19 restrictions had a substantial effect on businesses beginning in March 2020. In light of the foreseeable devastation to businesses and employees, the federal government passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES ACT") on March 27, 2020, which included the PPP loan program. Nothing whatsoever in this case implicates the PPP program.

Nor does anything else about *Plaintiffs'* bank accounts or loans have any relevance to whether *Defendants* violated the antitrust laws. As these subpoenas seek no relevant information, a protective order should issue pursuant to Rule 26(b), precluding JPMorgan and Beverly Bank from responding and providing the Plaintiffs' financial information to Subpoenaing Defendants.

### B. IN THE ALTERNATIVE, THE SUBPOENAS SEEKING PLAINTIFFS' PRIVATE FINANCIAL INFORMATION SHOULD BE QUASHED UNDER FEDERAL RULE OF CIVIL PROCEDURE 45(d).

In the alternative, the subpoenas for these Plaintiffs' private financial information should be quashed pursuant to Federal Rule of Civil Procedure 45(d). Rule 45(d) requires a court to "quash or modify a subpoena that requires disclosure of privileged or other protected matter, if no exception or waiver applies" or if the subpoena imposes an "undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii) and (iv). The moving party must establish the impropriety of the subpoena and that it has standing to bring the motion to quash. *See Prince v. Kato*, No. 18-CV-2952, 2019 WL 10947351, at *2 (N.D. Ill. Sept. 19, 2019). "Whether to quash a subpoena is within the Court's sound discretion." *Malibu Media, LLC v. Doe*, No. 13 C 8484, 2014 WL 1228383, at *1 (N.D. Ill. Mar. 24, 2014), *citing United States v. Ashman*, 979 F.2d 469, 495 (7th Cir. 1992).

As an initial matter, Plaintiffs have standing to move to quash these subpoenas. While a party generally lacks standing to quash a subpoena directed to a third party, there is an exception "if the subpoena infringes upon the movant's legitimate interests." *United States v. Raineri*, 670 F.2d 702, 712 (7th Cir. 1982); *see also Prince*, 2019 WL 10947351, at *2. A party's privacy

interest is one such "legitimate interest." *Prince*, 2019 WL 10947351, at *2; *see also Allstate Insurance Co. v. Electrolux Home Prods., Inc.*, No. 16-cv-4161, 2017 WL 5478297, at *3 (N.D. Ill. Nov. 15, 2017) ("production of private information about the party that may be in the possession of a third party" is a "legitimate interest"); *Sunlust Pictures, LLC v. Does 1-75*, No. C 1546, 2012 WL 3717768, at *2 (N.D. Ill. Aug. 27, 2012) (party has standing to move to quash subpoena where "the subpoena implicates a party's privacy interests"). Legitimate privacy interests include those "implicated by the potential release of a party's financial information." *PrimeSource Bldgs. Prods., Inc. v. Felten*, No. 16 CV 11468, 2018 WL 10425599, at *2 (N.D. Ill. Apr. 27, 2018), *citing Twyman v. S&M Auto Brokers*, No. 16 C 4182, 2016 WL 6082357, at *5 (N.D. Ill. Oct. 18, 2016). "Even a minimal privacy interest is sufficient to confer standing on the party seeking to quash a subpoena." *Id.* at *2, *citing Simon*, 2017 WL 66818, at *2; *see also Sunlust*, 2012 WL 3717768, at *2 (finding that party with "at least a minimal privacy interest in the information requested by subpoena. . . has standing to object").

Plaintiffs Simon and Simon and Smile Design Studio each have a legitimate privacy interest in moving to quash the subpoenas to JPMorgan and Beverly Bank. The subpoenas seek a broad array of documents and communications related to Plaintiffs' private financial information. Subpoenaing Defendants direct the subpoena recipient banks to produce all documents and communications "related to *any* services provided by [the financial institutions] relating to *any* accounts, investments, assets, loans, loan applications, or loan forgiveness programs," including "any other COVID-19-related loans, loan applications, or loan forgiveness programs," from January 1, 2014 to present. (Ex. J, Subpoena to Beverly Bank Req. No. 1 (emphasis added); Ex. K, Subpoena to JP Morgan No. 1 (same).) In other words, Defendants demand that the dental practices' banks turn over all the financial information they possess regarding these two Plaintiffs.

10

Simon and Simon and Smile Design Studio therefore have standing to move to quash these subpoenas. Having established that Plaintiffs have standing, there is no question that these subpoenas seek irrelevant information and should be quashed.

"On timely motion, the court for the district where compliance is required must quash or modify a subpoena that requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii). In ruling on a motion to quash, "the Court must balance the burden of compliance on Plaintiff's privacy interests against the benefit of production of the material sought." *Pursley*, 2020 WL 1433827, at *2. A party "may raise relevance in supporting [its] privacy argument," as "implicit in any subpoena issued pursuant to Rule 45 is the requirement that a subpoena seek relevant information." *Id.* Here, "because the subpoena[s] seek[] irrelevant information, [they] cannot outweigh [Plaintiffs'] privacy interests." *Id.* at *3; *see also Prince*, 2019 WL 10947351, at *3 (limiting scope of subpoena after "[b]alancing the privacy interests that Plaintiff has in the records, combined with the lack of relevancy in the information").

As discussed above in Section III.A, *supra*, Plaintiffs' private financial information is not relevant to whether Defendants have violated the antitrust laws. Because Plaintiffs have privacy interests in their financial information as a matter of law, and this information has no relevance to the issues in this case, the subpoenas should be quashed.

### C. DEFENDANTS SHOULD HAVE FIRST SOUGHT THIS INFORMATION FROM PLAINTIFFS, WHICH IS ANOTHER BASIS TO QUASH THE SUBPOENA.

Subpoenaing Defendants' failure to first request the financial information from Plaintiffs Simon and Simon and Smile Design Studio, instead of making initial requests via subpoenas to third-party financial institutions JPMorgan and Beverly Bank, is another basis to quash the subpoenas. "A non-party subpoena seeking information that is readily available from a party

through discovery may be quashed as duplicative or cumulative." *Tresóna Multimedia, LLC v. Legg*, No. 15 C 4834, 2015 WL 4911093, at *3 (N.D. Ill. Aug. 17, 2015). A party has an obligation to pursue this information by "the least intrusive means." *Id.*

During the parties' meet and confer efforts with regard to these subpoenas, Defendants claimed that they sought the subpoenaed information from Plaintiffs through RFP No. 53. (*See* Ex. L, Defendants' Letter to Plaintiffs (dated Jan. 11, 2023) at 1-2.) RFP No. 53 seeks documents "***sufficient to show*** … any applications for support, financial relief, paycheck protection, loans, or loan forgiveness." (Ex. H, Defendants' First Set of Requests for Production of Documents Directed to Plaintiffs (Dec. 16, 2020), at 20 (Request No. 53) (emphasis added).) The subpoenas, however, seek "***[a]ll documents … relating to any accounts, investments, assets, loans, loan applications, or loan forgiveness programs***," as well as "***[a]ll communications*** … ***relating to any accounts, investments, assets, loans, loan applications, or loan forgiveness programs*** …." (Ex. J, Defendants' Subpoena to Beverly Bank (Dec. 29, 2022), at 3-4 (Requests No. 1-2) (emphases added); Ex. K, Defendants' Subpoena to JPMorgan (Jan. 5, 2023), at 3-4 (Requests No. 1-2) (emphases added).)

The two sets of requests plainly are not the same. RFP No. 53 can be satisfied through the production of a simple balance sheet identifying any loans. The subpoenas demand every document and communication in the banks' possession related to the Plaintiffs. Defendants never made such a request of Plaintiffs themselves, and Plaintiffs never agreed to provide such information. Nor would Plaintiffs agree to provide this information since the requested information is so plainly irrelevant.

Further, Defendants never claimed that Plaintiffs' responses to RFP No. 53 were deficient or failed to provide Defendants with everything that Defendants were seeking and that Plaintiffs

had agreed to provide. Indeed, from roughly June through August 2022, Defendants sent a series of deficiency letters claiming that Plaintiffs had failed to produce responsive information to various *other* requests. Plaintiffs responded from roughly August through October 2022, including by making supplemental productions. None of Defendants' letters raised RFP No. 53. Nor in the many months that have passed did Defendants claim that Plaintiffs' supplemental productions were deficient in any way.

In sum, because Subpoenaing Defendants failed first to address these requests to Plaintiffs, the subpoenas should be quashed. *See Signal Fin. Holdings LLC v. Looking Glass Fin. LLC*, No. 17 C 8816, 2021 WL 4935162, at *3 (N.D. Ill. Jun. 10, 2021) (granting motion to quash and motion for protective order where "Defendants ha[d] not justified placing the burden of compliance on a third party when they ha[d] not begun, let alone exhausted, their efforts at obtaining the discovery from their party opponents"); *Bilek v. Nat'l Cong. of Emps., Inc.*, No. 18 C 3083, 2020 WL 10963975 (N.D. Ill. May 21, 2020), at *3-5 (granting motion to quash "without prejudice to Plaintiff first exhausting her efforts to obtain from Defendants at least some of the information she now is seeking with her subpoenas from third parties"); *Rossman v. EN Eng'g, LLC*, 467 F. Supp. 3d 586, 592 (N.D. Ill. 2020) (holding that "the subpoena … violated the basic prohibition against heaping unnecessary burdens on non-parties because the plaintiff did not exhaust other avenues before targeting a non-party to the lawsuit").

### D. THE SUBPOENAS SHOULD BE QUASHED AS THEY ARE DESIGNED TO HARASS PLAINTIFFS.

In addition, the subpoenas to JPMorgan and Beverly Bank should be quashed because they appear designed primarily to harass these two Plaintiffs by seeking "all" private financial information in the possession of these two banks. *Cohn v. Taco Bell Corp.*, 147 F.R.D. 154, 162 (N.D. Ill. 1993) is on all fours with this case. There, the "defendant, prior to exhausting appropriate

efforts to obtain financial information from plaintiffs themselves, served subpoenas upon five third party financial institutions … at which plaintiffs … had accounts. These subpoenas required the production of an extensive amount of documents, as well as testimony, which contained highly personal and sensitive financial data." *Id*. In quashing the subpoenas, the *Cohn* court found that the subpoenas were "designed to harass" the plaintiffs. *Id.* Like in *Cohn*, in this case, there is no "necessity for defendant[s] to require from third party institutions the production of prodigious amounts of highly personal and sensitive financial data concerning plaintiffs, much of which … [is] irrelevant … ." *Id.*

Here, Subpoenaing Defendants seek nearly nine years of a broad range of financial data directly from two Plaintiffs' financial institutions. Defendants' approach of launching a "broad fishing expedition," seeking wholly irrelevant information from third-party financial institutions, is a plain attempt to harass these Plaintiffs. *Simon*, 2017 WL 66818, at *4

## E. DEFENDANTS SERVED THE BEVERLY BANK SUBPOENA ON THE WRONG ENTITY.

Lastly, in their rush to issue their improper subpoenas, Defendants apparently subpoenaed the wrong entity. According to correspondence from Cindy Stuyvesant, Assistant General Counsel at Wintrust, "although directed to Beverly Bank & Trust Co., Inc., N.A., [the subpoena] was served on the registered agent for Wintrust Asset Finance, Inc., a wholly owned subsidiary of Beverly Bank & Trust Co., N.A. located in Texas, rather than serving Beverly Bank & Trust Co., N.A., which is located in Chicago. …[O]ne typically cannot serve process on a parent organization by serving its subsidiary." (*See* Ex M, Jan. 17, 2023 e-mail from C. Stuyvesant.)

Ms. Stuyvesant's analysis is correct. A subpoena directed to a parent company's records cannot be served on its subsidiary. *See In re Subpoena to Huawei Techs. Co., Ltd.*, 720 F. Supp. 2d 969, 972 (N.D. Ill. 2010) (finding that "argument that [parent] was directly served" via

14

subpoena served on subsidiary "is meritless"). The "subsidiary-parent relationship is insufficient, standing alone, to create the requisite agency relationship" for the subsidiary to be deemed an agent for service of process to the parent. *Id.* at 973; *see also Forde v. Arburg GmbH + Co KG*, No. 20-cv-02904, 2021 WL 148877, at *3 (N.D. Ill. Jan. 15, 2021) (similar); *Chung v. Tarom, S.A.*, 990 F. Supp. 581, 584 (N.D. Ill. 1998) (similar). Accordingly, Defendants' service of a subpoena directed to a Chicago company on a Texas subsidiary is not effective.

## III.  LR 37.2 COMPLIANCE STATEMENT

After consultation by telephone and good faith attempts to resolve differences, Subpoenaing Defendants and Plaintiffs were unable to reach an accord regarding these subpoenas. Counsel for the parties had a teleconference on January 6, 2023 at 11 a.m., with Plaintiffs' interim class counsel Ronald Aranoff and Leonid Feller, with counsel Emily Scholtes participating for the Subpoenaing Defendants that issued the subpoenas to Beverly Bank. On January 17, 2023, counsel Allison Reimann confirmed in writing that the Subpoenaing Defendants that issued the subpoena to JPMorgan have the same position as counsel that issued the subpoena to Beverly Bank.

WHEREFORE, Plaintiffs respectfully request that this Court: (a) issue a protective order pursuant to Federal Rule of Civil Procedure 26(b), precluding the production of any documents in response to the Subpoenaing Defendants' subpoenas to JPMorgan and Beverly Bank; (b) in the alternative, quash the Subpoenaing Defendants' subpoenas to Beverly Bank and JPMorgan pursuant to Federal Rule of Civil Procedure 45(d); and (c) grant all other just relief.

Dated: January 20, 2023                     Respectfully submitted,

**QUINN EMANUEL URQUHART &**          **WOLLMUTH MAHER & DEUTSCH LLP**
**SULLIVAN, LLP**

By:   */s/ Leonid Feller*         

Leonid Feller, P.C.
Bevin Brennan
Tyler Murray
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
Telephone: (312) 705-7400
leonidfeller@quinnemanuel.com
athenadalton@quinnemanuel.com

*Interim Co-Lead Class Counsel*

By:   */s/ Ronald J. Aranoff*      

Ronald J. Aranoff
Nicole M. Clark
William J. Hagan
500 Fifth Avenue – 12th Floor
New York, New York 10110
Telephone: (212) 382-3300
raranoff@wmd-law.com
nclark@wmd-law.com
whagan@wmd-law.com

*Interim Co-Lead Class Counsel*

**KAPLAN FOX & KILSHEIMER LLP**
Robert N. Kaplan
Gregory Arenson
Elana Katcher
850 Third Avenue
New York, New York 10022
Telephone: (212) 687-1980
rkaplan@kaplanfox.com
garenson@kaplanfox.com
ekatcher@kaplanfox.com

*Chair, Plaintiffs' Interim Executive Committee*

## <u>CERTIFICATE OF SERVICE</u>

I, Leonid Feller, an attorney, hereby certify that on January 20, 2023, I caused a true and correct copy of the foregoing **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR A PROTECTIVE ORDER PURSUANT TO FED. R. CIV. P. 26(b) OR, IN THE ALTERNATIVE, MOTION TO QUASH PURSUANT TO FED. R. CIV. P. 45(d) REGARDING SUBPOENAS TO BEVERLY BANK AND JPMORGAN** to be filed and served electronically via the Court's CM/ECF system. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and separately via email to counsel of record. Parties may access this filing through the court's CM/ECF System.

*/s/ Leonid Feller*