**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE: DELTA DENTAL ANTITRUST LITIGATION | CIVIL ACTION NO. 1:19-CV-06734 |
| | MDL NO. 2931 |
| | Hon. Elaine E. Bucklo |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR A
PROTECTIVE ORDER PURSUANT TO FED. R. CIV. P. 26(b) OR, IN THE
ALTERNATIVE, MOTION TO QUASH PURSUANT TO FED. R. CIV. P. 45(d)
<u>REGARDING SUBPOENAS TO BEVERLY BANK AND JPMORGAN</u>**

## INTRODUCTION

Rather than focusing on the third-party subpoenas at issue, Plaintiffs spend a considerable portion of their brief simply repeating the allegations in their Complaint. This discovery dispute, however, is not about Plaintiffs' (mistaken) view of Defendants' alleged conduct. It is about the financial condition of the dental practices of Plaintiffs Simon and Simon, PC ("City Smiles"), and Kaufman & Kaufman Smile Design Studio, LLC ("Dr. Kaufman").[1]

These two Plaintiffs, like the other named Plaintiffs, allege that they were injured and continue to be injured by Defendants' alleged antitrust violations.[2] Namely, they assert that they have lost revenue and profits due to Defendants' conduct. Two key questions in this case therefore are: (1) What were the financial conditions of Plaintiffs' dental practices?; and (2) What caused those financial conditions? The third-party subpoenas at issue[3] are intended to

---

[1] In addition to distracting from the matter before the Court, Plaintiffs' brief includes numerous mischaracterizations of the record. For example:

- Plaintiffs claim that Defendants cannot articulate a legitimate basis for the use of service areas, █████████████████████████████ and entirely ignoring the testimony of witnesses who have explained pro-competitive reasons for Delta Dental's rules. Pls.' Br. at 3.
- Plaintiffs baselessly argue that ████████████████████████ ████████████ is somehow evidence of "price fixing." *Id.* at 4.
- Plaintiffs continue to assert that DDPA imposes "a 'second-brand' revenue-restriction mechanism," ██████████████████████████████ ██████ *Id.*
- Plaintiffs allege that Defendants pay disproportionate salaries to their executives when the salaries are aligned with market rates and consistent with IRS standards. *Id.* at 5.

Defendants will more fully address Plaintiffs' persistent mischaracterization of the facts at the appropriate time.

[2] While there are other Named Plaintiffs in this case, Defendants currently have only subpoenaed banks for information about Simon and Simon, PC, and Kaufman & Kaufman Smile Design Studio LLC.

[3] The third-party subpoenas were issued to Beverly Bank & Trust Company, National Association ("Beverly Bank") and JPMorgan Chase Bank, National Association ("JPMorgan") (collectively, the "Subpoenas").

explore exactly those questions, seeking documents regarding Paycheck Protection Program ("PPP") loans and other COVID-related relief received by Plaintiffs. And they do not seek this information in a manner that is cumulative, duplicative, or harassing. Thus, this Court should deny Plaintiffs' Motion.

## BACKGROUND

In the Consolidated Complaint, Plaintiffs allege that these dental practices have suffered and continue to suffer financial injury allegedly caused by Defendants' purported violations of antitrust laws. *See* Consol. Compl. Dkt. 96 ¶ 11 ("Dr. Kaufman has been injured and continues to be injured in his business or property as a result of Defendants' violations of the antitrust laws."), ¶ 15 ("City Smiles has been injured and continues to be injured in his business or property as a result of Defendants' violations of the antitrust laws."), ¶ 139 (Plaintiffs "will continue to lose and have lost earnings because Delta Dental has used its monopsony power to depress dental treatment reimbursement rates as compared to a competitive market environment."). Plaintiffs have therefore put their dental practices' financial condition and the causes for any alleged "lost earnings" directly at issue in this case—the practices' financial condition is the basis for Plaintiffs' claims of injury and damages and will therefore be a focus of the defenses put forth by Defendants.

On December 16, 2020, Defendants issued their first set of requests for production of documents ("RFPs") to Plaintiffs. Relevant to this dispute, RFP No. 53 asked Plaintiffs to produce "[d]ocuments sufficient to show (a) any applications for support, financial relief, paycheck protection, loans, or loan forgiveness sought by You and/or Your dental practice, (b) the relief or support received, and (c) the entity that provided the relief or support." Pls.' Ex. H, Dkt. 460-8, Defs.' First Set of Reqs. for Produc. of Docs. Directed to Pls., Request No. 53, at

2

20, Dec. 16, 2020. After meeting and conferring over their objections, Plaintiffs agreed to search

for documents responsive to RFP No. 53 and to run the following search terms to identify

responsive documents: "(Loan OR lend* OR forgive* OR "paycheck protection" OR "tax

return") w/15 (practice or dental or dentist or office or business or partnership)." Ex. 1, Defs.'

Letter to Pls., , at 21, Aug. 13, 2021 (identifying search terms).

Plaintiffs produced some documents responsive to RFP No. 53, but their productions

were incomplete. For example,  However,

some Plaintiffs, including the two at issue here, did not produce any applications or related

documents associated with those loans or relief.

Defendants then issued the Subpoenas to Beverly Bank and JPMorgan. Through the

Subpoenas, Defendants do not literally seek every document and communication regarding

services Beverly Bank and JPMorgan provided to Plaintiffs. Instead, as the Subpoenas make

clear, Defendants specifically seek the documents regarding PPP loans and other COVID-related

relief that Plaintiffs failed to produce:

1. All documents related to any services provided by You to [Plaintiff] relating
to any accounts, investments, assets, loans, loan applications, or loan
forgiveness programs, including without limitation any Paycheck Protection
Program loan ("PPP loan"), any loans sponsored or administered by the Small
Business Administration ("SBA"), and any other COVID-19-related loans,
loan applications, or loan forgiveness programs. This includes collateral
pledged by [Plaintiff] to secure any PPP loan, the amount of the loan granted
to [Plaintiff], the purpose of the loan in general terms, the maturity of the loan,
the loan status (charged-off, paid in full, forgiven, etc.), all documents
submitted by [Plaintiff] to the SBA in support of its application for any PPP
loan, all documents relating to any subsequent loan applications made by
[Plaintiff] to the SBA, and all other documents in Your possession, custody or
control that relate to the SBA loan granted to [Plaintiff].

3

2. All communications with [Plaintiff], any current or former employees of [Plaintiff], or any representatives, including attorneys, of [Plaintiff] or its employees relating to any accounts, investments, assets, loans, loan applications, or loan forgiveness programs, including without limitation any PPP loan, any loans sponsored or administered by the SBA, and any other COVID-19-related loans, loan applications, or loan forgiveness programs.

*See* Pls.' Ex. K, Dkt. 460-11, JPMorgan Subpoena at 7–8; Pls.' Ex. J, Dkt. 460-10, Beverly Bank Subpoena at 7–8.[4]

During a January 6, 2023 meet and confer, Plaintiffs objected to the Subpoenas, claiming the Subpoenas sought documents that are not relevant to this litigation—completely ignoring that Plaintiffs already had searched for and produced related materials. At no point did Plaintiffs raise proportionality, confidentiality, or burden as a reason why this discovery should be denied. Following the meet and confer, Defendants explained to Plaintiffs that if they had "responsive documents that have not yet been produced and would render the [Subpoenas] . . . completely duplicative of the Plaintiffs' productions," Defendants would consider withdrawing the Subpoenas. Pls.' Ex. L, 460-12, Defs.' Counsel's Letter to Pls.' Counsel, Jan. 11, 2023; *see also* Ex. 4, Defs.' Counsel's Email Correspondence to Pls.' Counsel, Jan. 17, 2023. Plaintiffs did not agree to produce any additional documents and instead filed the present Motion on January 20, 2023.

## ARGUMENT

Regardless of whether Plaintiffs' Motion is framed as a motion to quash or a motion for a protective order, the burden is on Plaintiffs to establish the impropriety of the Subpoenas. *See Sabuco v. Pecelunas*, No. 17-CV-9372, 2019 WL 13215194, at *1 (N.D. Ill. Sept. 17, 2019)

---

[4] Defendants are, of course, willing to confer with Beverly Bank and JPMorgan to limit the burden of responding to the Subpoenas, as appropriate.

(moving party carries the burden on a motion to quash); *Allstate Ins. Co. v. Electrolux Home Prods., Inc.*, No. 16-CV-4161, 2017 WL 5478297, at \*2 (N.D. Ill. Nov. 15, 2017) (moving party carries the burden on a motion for a protective order). Either way, the threshold inquiry is the relevance of the documents sought. *City of Rockford v. Mallinckrodt ARD*, *Inc.*, No. 17-CV-50107, 2020 WL 11191830, at \*3 (N.D. Ill. May 27, 2020) ("[W]hether reviewing Plaintiff's motion challenging the subpoena under Rule 45 or Rule 26, '[t]he initial inquiry in enforcement of any discovery request is one of relevance.'" (citation omitted)). "'The scope of material obtainable by a Rule 45 subpoena is as broad as permitted under the discovery rules.' Accordingly, parties may seek discovery 'regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.'" *Trs. of Chic. Reg'l Council of Carpenters Pension Fund v. Drive Constr., Inc.*, No. 19-CV-2965, 2023 WL 429047, at \*3 (N.D. Ill. Jan. 26, 2023) (quoting *Williams v. Blagojevich*, No. 05-CV-4673, 2008 WL 68680, at \*3 (N.D. Ill. Jan. 2, 2008) and Fed. R. Civ. P. 26(b)(1)).

## I. THE SUBPOENAS SEEK HIGHLY RELEVANT FINANCIAL INFORMATION CONCERNING PLAINTIFFS' DENTAL PRACTICES.

Defendants need Plaintiffs' PPP loan and COVID relief applications and related materials because they will help Defendants disaggregate losses unrelated to Defendants' alleged violations of the antitrust laws. In other words, Defendants will use these materials to argue that alleged damages suffered by Plaintiffs during the pandemic are attributable to COVID, instead of Defendants' allegedly anticompetitive conduct.[5] Courts routinely allow discovery of such

---

[5] For example, the PPP Loan Application requires applicants to certify that "[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant," Ex. 5, PPP Loan Application, at 2, and the PPP Loan Forgiveness Application requires applicants seeking certain Safe Harbor protections to certify that they were "unable to operate between February 15, 2020 and the end of the Covered Period at the same level of business activity as before February 15, 2020 due to compliance with requirements . . . related to the maintenance of standards of sanitation, social

financial information by defendants for this use. *See, e.g., Eternity Mart, Inc. v. Nature's Sources, LLC*, No. 19-CV-2436, 2021 WL 4894701, at *4 (N.D. Ill. Oct. 20, 2021) ("[I]t would be inequitable for Plaintiff, who filed this action claiming lost profits, to now fail to provide the very financial information necessary to suitably demonstrate the measure of its financial injury."); *Pain Ctr. of SE Ind., LLC v. Origin Healthcare Sols. LLC*, No. 13-CV-133, 2015 WL 2166708, at *3 (S.D. Ind. May 8, 2015) (affirming magistrate's denial of motion to quash third-party subpoenas requesting ten years of financial records where the plaintiffs alleged that the defendants "caused Plaintiffs' financial position to deteriorate"). And these arguments have significant implications for Plaintiffs' ability to certify their class because "damages must be determined by a common methodology or evidence for all members of the class." *See In re Steel Antitrust Litig.*, No. 08-CV-5214, 2015 WL 5304629, at *6 (N.D. Ill. Sept. 9, 2015).

Plaintiffs' arguments that the documents are not relevant all fail. First, Plaintiffs argue that the documents Defendants seek constitute "downstream data and financial information" that is not discoverable "in an antitrust case." Pls.' Br. at 8. "Downstream discovery," however, is a term of art that courts use to refer to a very specific type of discovery in antitrust cases—discovery seeking "documents and data reflecting a purchaser's use or sale of a product after the purchase." *In re Turkey Antitrust Litig.*, No. 19-CV-8318, 2021 WL 6428398, at *1 n.3 (N.D. Ill. Dec. 16, 2021) (quoting *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, No. 09-CV-7666, 2012 WL 1533221, at *1 (N.D. Ill. Apr. 27, 2012)). These are plainly not the type of documents that Defendants seek here. Defendants are seeking documents related to the financial

---

distancing, or any other work or customer safety requirement related to COVID-19," Ex. 6, PPP Loan Forgiveness Application, at 2. These certifications and the underlying documents will help Defendants determine the impact of COVID on Plaintiffs.

condition of Plaintiffs' dental practices—an issue that is directly relevant to the Plaintiffs' claims of antitrust impact and damages. This is not a case about an intermediate good that proceeds down a chain of distribution, like the downstream discovery cases Plaintiffs cite. Plaintiffs' downstream discovery cases have no bearing on this dispute.

Second, Plaintiffs inexplicably claim that "[n]othing about Plaintiffs' financial information . . . is relevant" because "Defendants' actions are at issue, not Plaintiffs' finances." Pls.' Br. at 8. But discovery is not one-sided, focusing only on documents that Plaintiffs believe support their claims. Plaintiffs claim that they lost (and continue to lose) revenue and profits due to Defendants' alleged actions. Defendants are allowed to defend against those claims and to seek information to determine whether Plaintiffs lost earnings and, if so, to test alternate explanations for those losses. *See Eternity Mart*, 2021 WL 4894701, at *4; *Pain Ctr. of SE Ind.*, 2015 WL 2166708, at *3. Plaintiffs' citation to *In re Folding Carton Antitrust Litigation*, 76 F.R.D. 420 (N.D. Ill. 1977), only undermines their argument. *See* Pls.' Br. at 8. There, the court did not prohibit discovery of the plaintiffs' financial information, rather, the court compelled its production. *In re Folding Carton Antitrust Litig.*, 76 F.R.D. at 431. The court merely noted that "[w]hether the plaintiffs should be required to produce such financial information [wa]s a *separate question*" from whether the defendants should be required to produce financial information. *Id.* at 427 (emphasis added).

Finally, Plaintiffs contend, citing *Prince v. Kato*, No. 18-CV-2952, 2019 WL 10947351 (N.D. Ill. Sept. 19, 2019), and *Pursley v. City of Rockford*, No. 18-CV-50040, 2020 WL 1433827 (N.D. Ill. Mar. 24, 2020), that their privacy interests outweigh the relevance of the documents Defendants seek because, in their view, the documents are "irrelevant." Pls.' Br. at 11. But the

information Defendants seek through the Subpoenas is no more private than the practice

financial statements Plaintiffs have already produced.

Moreover, *Prince* and *Pursley* are entirely unrelated to the issues here. In *Prince*, the

court modified a subpoena so as to prohibit the defendants from subpoenaing an inmate's sixth

and seventh grade academic records to defend against a challenge to an allegedly false and

involuntary confession given by the inmate as an adult. 2019 WL 10947351, at *3. And in

*Pursley*, the court prohibited the defendants from subpoenaing all recorded telephone calls made

by an inmate over a seven-year period to dispute the contention that the inmate was deprived of

contact with his family while in prison. 2020 WL 1433827, at *3. Neither case involved a

request for the type of financial information at issue here, which, as noted above, numerous

courts have found to be relevant and discoverable when financial injury is alleged.

## II.   THE SUBPOENAS WERE NOT DESIGNED TO HARASS; PLAINTIFFS AGREED TO PRODUCE THESE RECORDS BUT FAILED TO DO SO.

Plaintiffs argue that Defendants should have first tried to obtain the documents at issue

from Plaintiffs. *See* Pls.' Br. at 11–13. But Defendants *did* first try to obtain these documents

from Plaintiffs through RFP No. 53. *See* Pls. Ex. H at 20. As noted above, Plaintiffs agreed to

run search terms that would capture documents responsive to RFP No. 53, but City Smiles and

Dr. Kaufman (unlike some other Plaintiffs) did not produce any PPP or COVID-relief loan

applications. Defendants issued the Subpoenas primarily to obtain copies of those documents.

After issuing the Subpoenas, Defendants offered to consider withdrawing the Subpoenas if

Plaintiffs agreed to produce responsive documents, but Plaintiffs never did so. Pls.' Ex. L.

Accordingly, the documents at issue are not "readily available" from Plaintiffs and Defendants'

Subpoenas are not "duplicative or cumulative," as Plaintiffs City Smiles and Dr. Kaufman have

failed to turn over these PPP or COVID loan applications. *See* Pls.' Br. at 11–12 (quoting *Tresóna Multimedia, LLC v. Legg*, No. 15-CV-4834, 2015 WL 4911093, at *3 (N.D. Ill. Aug. 17, 2015)).

Plaintiffs also argue that Defendants' Subpoenas are designed to harass Plaintiffs, *see* Pls.' Br. at 13–14, but this argument is equally unavailing. Plaintiffs claim that the single case upon which they rely, *Cohn v. Taco Bell Corp.*, 147 F.R.D. 154 (N.D. Ill. 1993), "is on all fours with this case," but that case is clearly inapposite. Pls.' Br. at 13. In *Cohn*, the defendants' third-party subpoenas were quashed because they sought an "extensive amount" of "highly personal and sensitive financial data" about the plaintiffs and a non-party despite the fact that the non-party's financial information was "absolutely not relevant" in the case and the "plaintiffs' financial state appear[ed] to be no more than a collateral matter" in the case. *Cohn*, 147 F.R.D. at 162. Here, in contrast, the Subpoenas seek financial information about specific loans sought by the two Plaintiffs—both of which are dental practices, not persons—that is directly relevant to the Plaintiffs' claims of financial harm.

## III.  DEFENDANTS' SERVICE ON BEVERLY BANK WAS APPROPRIATE.

Plaintiffs claim that Defendants served the wrong entity in issuing its Subpoena to Beverly Bank. Pls.' Br. at 14. Not so. According to publicly available records, the registered agent for Beverly Bank is CT Corporation System, located at 330 N. Brand Blvd, Ste. 700, Glendale, CA 91203. *See* Ex. 7, California Secretary of State Certified Charter (listing CT Corporation System as Beverly Bank's Registered Agent); Ex. 8, Lexis Corporation Filings Report (same and providing address for Registered Agent). Pursuant to Federal Rules of Civil Procedure 4 and 45, Defendants served the Beverly Bank subpoena on CT Corporation System. *See* Ex. 9, Aff. of Special Process Server. Therefore, Defendants' service was proper. *See In re*

9

*Subpoena to Huawei Techs. Co.*, 720 F. Supp. 2d 969, 972 (N.D. Ill. 2010) (serving a corporation with a subpoena can be accomplished by serving the corporation's registered agent); *Sanchez Y Martin, S.A. de C.V. v. Dos Amigos, Inc.*, No. 17-CV-1943, 2018 WL 2387580 (S.D. Cal. May 24, 2018) (similar).

Even if Defendants had improperly served Beverly Bank, Plaintiffs have pointed to no authority establishing that they have standing to challenge service of process on behalf of Beverly Bank. Pls.' Br. at 14–15. Indeed, each of Plaintiffs' cases involved the served party challenging service, not a party challenging service upon another. *See In re Subpoena to Huawei Techs.*, 720 F. Supp. 2d at 971 (motion by improperly served subpoena recipient); *Forde v. Arburg GmbH + Co KG*, No. 20-CV-2904, 2021 WL 148877, at *3 (N.D. Ill. Jan. 15, 2021) (motion by defendant improperly served with complaint); *Chung v. Tarom, S.A.*, 990 F. Supp. 581, 583 (N.D. Ill. 1998) (same). Plaintiffs, in fact, do not have standing to challenge the service on Beverly Bank. *See In re Szanto*, No. 18-MC-61, 2019 WL 1877226, at *2 (S.D. Ind. Apr. 26, 2019) ("[T]he Court fails to see how the Debtor could argue that a financial institution did not receive proper service. If service on Chase Bank were an issue, Chase Bank could have brought that issue to the Court's attention.").

## **CONCLUSION**

For the foregoing reasons, this Court should deny Plaintiffs' Motion and allow

Defendants to proceed with the Subpoenas.

Dated: February 8, 2023.                       Respectfully submitted,

*/s/ Allison W. Reimann*               */s/ Stephen M. Medlock*
Allison W. Reimann                  Stephen M. Medlock
GODFREY & KAHN, S.C.            VINSON & ELKINS LLP
One East Main Street Suite 500       2200 Pennsylvania Ave., NW
Madison, WI 53703                 Suite 500 West
(608) 257-3911                    Washington, DC 20037
areimann@gklaw.com             202-639-6578
                                        smedlock@velaw.com
Nina G. Beck
GODFREY & KAHN, S.C.
833 E. Michigan St., Suite 1800     *Counsel for Oregon Dental Service d/b/a*
Milwaukee, WI 53202          *Delta Dental of Oregon*
414-273-3500
nbeck@gklaw.com

*Counsel for Defendant Delta Dental of*
*Wisconsin, Inc.*

11

## <u>CERTIFICATE OF SERVICE</u>

      I, Allison W. Reimann, an attorney, hereby certify that on February 8, 2023, I caused a true and correct copy of the foregoing DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER PURSUANT TO FED. R. CIV. P. 26(b) OR, IN THE ALTERNATIVE, MOTION TO QUASH PURSUANT TO FED. R. CIV. P. 45(d) REGARDING SUBPOENAS TO BEVERLY BANK AND JPMORGAN to be filed and served electronically via the Court's CM/ECF system. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

                                          */s/ Allison W. Reimann*

28761682