IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re Delta Dental Antitrust litigation | ) ) ) ) ) | No. 19 CV 6734<br><br>MDL No. 2931 |

ORDER

Plaintiffs in this multi-district class action are dental service providers who claim that a class of dental insurers and related entities violated and continue to violate Section 1 of the Sherman Act, 15 U.S.C. § 1, through a price-fixing conspiracy. In the course of discovery, defendants sought from plaintiffs, for the period January 1, 2014, through "the present,"

> Documents sufficient to show (a) any applications for support, financial relief, paycheck protection, loans, or loan forgiveness sought by You and/or Your dental practice, (b) the relief or support received, and (c) the entity that provided the relief or support.

Request for Production No. 53, Pl.'s Mem., Exh. H, ECF 459-8, at 20. Plaintiffs objected to this request on the ground that it was "harassing, overly broad, unduly burdensome, and seeks information that is not relevant, not reasonably calculated to lead to the discovery of admissible evidence, and not proportional to the needs of the case." Pl.'s Mem., Exh. I, ECF 469, at 42. Nevertheless, after meeting and conferring, plaintiffs agreed to conduct a search using terms designed to identify material responsive to this request and

to produce documents they deemed "sufficient to show" loans obtained by the dental practices.

In or around April of 2022, plaintiffs confirmed that the document production was substantially complete. Over the following months, defendants sent a series of deficiency letters contending that certain of plaintiffs' discovery responses were incomplete. None of these letters targeted plaintiffs' responses to RFP No. 53. But in late December of 2022 and January of 2023, apparently without warning, counsel for eight defendants served a subpoena on JP Morgan, which provided one or more loans to plaintiff Simon and Simon, and another subpoena on Beverly Bank, which provided one or more loans to plaintiff Smile Design Studio. Each subpoena seeks:

- All documents related to any services provided by You to [Plaintiff] relating to any accounts, investments, assets, loans, loan applications, or loan forgiveness programs, including without limitation any Paycheck Protection Program loan ("PPP loan"), any loans sponsored or administered by the Small Business Administration ("SBA"), and any other COVID-19-related loans, loan applications, or loan forgiveness programs. This includes collateral pledged by [Plaintiff] to secure any PPP loan, the amount of the loan granted to [Plaintiff], the purpose of the loan in general terms, the maturity of the loan, the loan status (charged-off, paid in full, forgiven, etc.), all documents submitted by [Plaintiff] to the SBA in support of its application for any PPP loan, all documents relating to any subsequent loan applications made by [Plaintiff] to the SBA, and all other documents in Your possession, custody or control that relate to the SBA loan granted to [Plaintiff].

- All communications with [Plaintiff], any current or former employees of [Plaintiff], or any representatives, including attorneys, of [Plaintiff] or its employees relating to any accounts, investments, assets, loans, loan applications, or loan forgiveness programs, including without limitation any PPP loan, any loans sponsored or administered by the SBA, and any

    other COVID-19-related loans, loan applications, or loan forgiveness programs.

Pl.'s Mem., Exhs. J, K, ECF 459-10, -11, at 42.

    Plaintiffs Simon and Simon and Smile Design Studio ("movants") seek a protective order to preclude the banks from providing any documents in response to these subpoenas or, in the alternative, to quash them entirely. Their lead argument is that the subpoenas seek information that is not relevant to the parties' claims or defenses. For the reasons explained below, I agree and grant the motion.

    Rule 26(b)(1) limits discovery to matters that are relevant and proportional, and these limits "apply with equal force to nonparty discovery under Rule 45." *DeLeon-Reyes v. Guevara*, No. 1:18-CV-01028, 2020 WL 3050230, at \*3 (N.D. Ill. June 8, 2020). Defendants argue that information about individual plaintiffs' loan activity is relevant because plaintiffs put their "financial condition" at issue by claiming damages as a result of defendants' anticompetitive conduct. I disagree. The antitrust injury plaintiffs claim "is not based upon loss or profit, and does not depend upon whether or not [they] subsequently passed the overcharge on to others." *In re Vitamins Antitrust Litig.*, Nos. 99-197 (TFH), 1285, 2002 U.S. Dist. LEXIS 25889, at \*27 (D.D.C. Jan. 8, 2002) (citing *In re Folding Carton Antitrust Litigation*, 83 F.R.D. 251 (1978)). In other words, while plaintiffs' claim that defendants depressed reimbursement rates for all dental service providers in violation of the Sherman Act claim requires them to prove measurable damages, it does not

require them to prove that the alleged price-fixing had any specific impact on their individual bottom lines. Accordingly, "individualized downstream data" concerning "the profitability of [plaintiffs'] operations" is irrelevant. *See In re Vitamins Antitrust Litig.*, 198 F.R.D. 296, 300 (D.D.C. 2000). *See also In re Folding Carton Antitrust Litig.*, 76 F.R.D. 420, 427 (N.D. Ill. 1977) ("[t]he antitrust laws do not require that those seeking to enforce them have any particular financial condition.").

Defendants' argument that they "need Plaintiffs' PPP loan and COVID relief applications and related materials because they will help Defendants disaggregate losses unrelated to Defendants' alleged violations of the antitrust laws," Opp., ECF No. 467 at 5, does not survive scrutiny. Setting aside that plaintiffs seek damages beginning in 2015, long before the emergence of Covid-19, PPP loans were designed to help businesses whose operations stalled during the acute phase of the pandemic satisfy their payroll and related obligations. The loan programs established by the CARES Act had nothing to do with the market-wide depression in dental reimbursement rates that plaintiffs attribute to defendants' anticompetitive conduct, and the fact that individual plaintiffs may have sought relief through these programs has no bearing on their anticompetitive alleged injuries.

None of defendants' cited authorities compels a contrary conclusion. Defendants insist that courts "routinely allow

discovery" of the type of financial information they seek here, but neither of the cases they cite for this proposition involves antitrust claims under the Sherman Act. *See* Opp., ECF 467 at 5-6. *Eternity Mart, Inc. v. Nature's Sources, LLC*, No. 19-CV-2436, 2021 WL 4894701 (N.D. Ill. Oct. 20, 2021), concerned claims of defamation and intentional interference with business relationships brought by an online retailer who alleged that the defendant's conduct caused Amazon to suspend its account, causing it to lose profits. In that context, the court held that the plaintiff's tax returns were discoverable as relevant to the plaintiff's damages. As noted above, however, an antitrust plaintiff asserting claims based on price-fixing need not show that it lost profits to establish an antitrust injury. And in *Pain Ctr. of SE Ind., LLC v. Origin Healthcare Sols. LLC*, No. 13-CV-133, 2015 WL 2166708 (S.D. Ind. May 8, 2015), the plaintiffs claimed that the defendants' fraud and breach of contract "caused Plaintiffs' financial position to deteriorate, forcing them into a 'vicious cycle of borrowing from banks and friends to cover financial shortfalls.'" *Id*. at *9 (quoting the complaint). On these allegations, the court reasonably compelled the plaintiffs to produce evidence of their financial position, but its analysis is inapposite here.

The only antitrust cases defendants cite to support their relevance argument are *In re Steel Antitrust Litig.*, No. 08-CV-5214, 2015 WL 5304629, at *6 (N.D. Ill. Sept. 9, 2015), and *In re Folding*

5

*Carton Antitrust Litigation*, 76 F.R.D. 420 (N.D. Ill. 1977), but neither persuades me that they are entitled to the sweeping third-party discovery they seek. The cited decision in *In re Steel Antitrust Litigation* does not involve the discovery of any party's financial information. Rather, it examines whether the methodologies used by the plaintiff's experts allowed for classwide resolution of damages. Nothing in the court's analysis suggests that defendants are entitled to discover the wide-ranging financial information they seek through third-party subpoenas to the movants' banks.

*In re Folding Carton Antritrust Litigation* supports plaintiff's position, not defendants'. While it is true that the court compelled the plaintiffs in that case to produce "budget and cost guidelines," it reasoned that these materials offered some evidence of how the plaintiffs themselves valued the products they purchased from the defendants, and thus could be "helpful in ascertaining the market value of certain folding cartons and relevant to whether excessive prices were charged." 76 F.R.D. at 427-28. By contrast, whether individual plaintiffs in this case sought or obtained loans in the wake of the Covid-19 pandemic is irrelevant to whether defendants' anticompetitive conduct depressed dental providers' reimbursement rates below their competitive market value. Further, the court's conclusion that the plaintiffs' "budgets and cost guidelines" were discoverable did not detract from its observation that a plaintiff's financial condition is generally irrelevant to a price-fixing claim

6

and thus not subject to discovery. *See id*. at 427. Indeed, the court reiterated this observation in a later opinion, emphasizing that to the extent the defendants' anticompetitive conduct resulted in "an overcharge, its amount can be determined by looking at the price movement of folding cartons and not the profit pictures of various folding carton purchasers. If plaintiffs are entitled to recover for an overcharge, they will do so regardless of whether their profits decreased or increased during the period of the conspiracy." *In re Folding Carton Antitrust Litig.,* No. MDL 250, 1978 U.S. Dist. LEXIS 20409, at *9 (N.D. Ill. May 5, 1978).

Even, however, if I assume that plaintiffs' downstream financial information had some marginal relevance here, the loan information defendants seek from movants' banks is unnecessarily broad—indeed, it is vastly broader and more intrusive than the documents they requested in RFP 53, i.e., documents "sufficient to show" any applications for or receipt of Covid-19 related loans. Defendants' arguments to the contrary are belied by the face of the respective requests. The description of materials requested in the subpoenas is infinitely more expansive than those covered by RFP 53, as they seek, "*All* documents related to *any* services provided by You [to movants] relating to *any* accounts, investments, assets, loans, loan applications, or loan forgiveness programs," including *without limitation* those relating to the PPP or other Covid-related loans. (Emphasis added) Defendants' suggestion that plaintiffs agreed to

7

produce this unbounded universe of materials when they agreed to "run search terms that would capture documents responsive to RFP No. 53," Opp., ECF 467, at 8, defies credulity. Moreover, if defendants found plaintiffs' responses to RFP deficient, their recourse was to raise the issue as they did others in subsequent discovery negotiations, and, if no resolution was reached, to compel additional responses from plaintiffs prior to issuing third-party discovery. *See, e.g., Bilek v. Nat'l Cong. of Emps., Inc.*, No. 18 C 3083, 2020 WL 10963975, at *4 (N.D. Ill. May 21, 2020) (granting motion to quash third-party subpoenas where the plaintiff had not "exhaust[ed] the procedural tools or vehicles available to her to obtain relevant information from Defendants" before issuing subpoenas). Defendants offer no explanation for their failure to follow this procedure.

For the foregoing reasons, the motion for a protective order is granted.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated: March 8, 2023