# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| IN RE DELTA DENTAL ANTITRUST LITIGATION<br><br><br>*This document relates to: ALL ACTIONS* | **CIVIL ACTION NO.**<br><br>1:19-CV-06734<br><br>**MDL No. 2931**<br><br>Hon. Elaine E. Bucklo |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
## ENTERPRISE STATE DEFENDANTS' MOTION FOR A
## <u>PROTECTIVE ORDER AS TO DEPOSITION OF MICHAEL HANKINSON</u>

**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**

Leonid Feller, P.C.
Bevin Brennan
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
Telephone: (312) 705-7400
leonidfeller@quinnemanuel.com
bevinbrennan@quinnemanuel.com

*Interim Co-Lead Class Counsel*

**WOLLMUTH MAHER & DEUTSCH LLP**

Ronald J. Aranoff
Jay S. Handlin (*pro hac vice forthcoming*)
William J. Hagan  (*pro hac vice forthcoming*)
500 Fifth Avenue, 12th Floor
New York, New York 10110
Telephone: (212) 382-3300
raranoff@wmd-law.com
jhandlin@wmd-law.com
whagan@wmd-law.com

*Interim Co-Lead Class Counsel*

# TABLE OF CONTENTS

**Page**

INTRODUCTION................................................................................................. 1

BACKGROUND................................................................................................. 3

ARGUMENT ..................................................................................................... 5

I.    MR. HANKINSON IS A FACT WITNESS WHO HAS SERVED AS A SENIOR EXECUTIVE FOR MULTIPLE DEFENDANTS AND WILL TESTIFY CONCERNING UNIQUE, NON-PRIVILEGED INFORMATION................................ 6

II.   MR. HANKINSON'S ROLE AS IN-HOUSE COUNSEL DOES NOT PROVIDE A BASIS TO PRECLUDE HIS DEPOSITION ........................................................... 7

      A.    Plaintiffs Have the Right to Mr. Hankinson's Deposition Pursuant to Rule 26................................................................................................... 7

      B.    The *Shelton* Test Does Not Bar Mr. Hankinson's Deposition............................ 11

III.   MR. HANKINSON'S DEPOSITION IS NOT DUPLICATIVE OR CUMULATIVE. ...................................................................................... 13

IV.   DEFENDANTS' REQUEST FOR DETAILED DEPOSITION TOPICS OR A PROTOCOL IS UNPRECEDENTED AND INAPPROPRIATE................................. 14

CONCLUSION ................................................................................................. 15

# TABLE OF AUTHORITIES

**Page**

## Cases

*aaiPharma, Inc. v. Kremers Urb. Dev. Co.*,
    361 F. Supp. 2d 770 (N.D. Ill. 2005)................................................................ 11

*Armada (Singapore) Pte Ltd v. Amcol Int'l Corp.*,
    160 F. Supp. 3d 1069 (N.D. Ill. 2016)...................................................9, 11, 12

*B.F.G. by R.G. v. Blackmon*,
    No. 08 C 1565, 2008 WL 11517594 (N.D. Ill. Dec. 9, 2008)......................13-14

*Boyd v. Lazer Spot, Inc.*,
    No. 19-cv-8173, 2022 WL 2865881 (N.D. Ill. July 6, 2022) ........................... 6

*Caponigro v. Navistar Int'l Transp. Corp.*,
    No. 93-cv-647, 1994 WL 233772 (N.D. Ill. May 18, 1994) ....................6, 8, 9, 13

*City of Rockford v. Mallinckrodt ARD, Inc.*,
    No. 20 CV 50056, 2020 WL 1675593 (N.D. Ill. Apr. 6, 2020)........................... 13

*City of Roseville Employees' Ret. Sys. v. Apple Inc.*,
    No. 19-cv-2033, 2022 WL 3083000 (N.D. Cal. Aug. 3, 2022) ........................... 8

*ED&F Cap. Markets Ltd. v. JVMC Holdings Corp.*,
    335 F.R.D. 174 (N.D. Ill. 2020)........................................................................ 5

*Espejo v. Santander Consumer USA, Inc.*,
    No. 11-CV-8987, 2014 WL 6704382 (N.D. Ill. Nov. 25, 2014) .................2, 10, 14

*United States v. Evans*,
    113 F.3d 1457 (7th Cir. 1997) ................................................................... 11, 15

*Favala v. Cumberland Eng'g Co.*,
    17 F.3d 987 (7th Cir. 1994)........................................................................ 2, 7

*Harriston v. Chicago Trib. Co.*,
    134 F.R.D. 232 (N.D. Ill. 1990)..................................................................... 10

*Howard v. Securitas Sec. Servs., USA Inc.*,
    630 F. Supp. 2d 905 (N.D. Ill. 2009).............................................................. 14

*Hunt Int'l Res. Corp. v. Binstein*,
    98 F.R.D. 689 (N.D. Ill. 1983)........................................................................ 9

*Kaiser v. Mut. Life Ins. Co. of N.Y.*,
    161 F.R.D. 378 (S.D. Ind. 1994)................................................................ 9, 12

*Kleen Prods. LLC v. Packaging Corp. of Am.*,
    No. 10 C 5711, 2012 WL 4498465 (N.D. Ill. Sept. 28, 2012).........................5, 13

*Lincoln Nat'l Life Ins. v. TCF Nat'l Bank*,
    No. 01 C 6142, 2011 WL 13119407 (N.D. Ill. Dec. 12, 2011) .......................... 10

*Loendorf v. PeopleConnect, Inc.*,
  No. 21 C 51, 2022 WL 2867174 (N.D. Ill. July 21, 2022) ................................... 10

*M & R Amusements Corp. v. Blair*,
  142 F.R.D. 304 (N.D. Ill. 1992) ......................................................................... 10

*Miyano Mach. USA, Inc. v. MiyanoHitec Mach., Inc.*,
  257 F.R.D. 456 (N.D. Ill. 2008) ......................................................................... 14

*Pamida, Inc. v. E.S. Originals, Inc.*,
  281 F.3d 726 (8th Cir. 2002) ............................................................................. 12

*Pfizer Inc. v. Apotex Inc.*,
  744 F. Supp. 2d 758 (N.D. Ill. 2010) ................................................................... 5

*In re Plasma-Derivative Protein Therapies Antitrust Litig.*,
  No. 09-cv-7666, 2013 WL 5274296 (N.D. Ill. Sept. 18, 2013) ...................... 2, 7, 10

*Powers v. Bd. of Trustees of the Univ. of Illinois*,
  No. 08-cv-2267, 2010 WL 3834441 (C.D. Ill. Sept. 23, 2010) .............................. 8

*qad, inc v. ALN Assocs., Inc.*,
  132 F.R.D. 492, 495 (N.D. Ill. 1990) ................................................................. 8, 9

*Quality Croutons, Inc. v. George Weston Bakeries, Inc.*,
  No. 05-cv-4928, 2006 WL 2375460 (N.D. Ill. Aug. 14, 2006) .............................. 7

*RBS Citizens, N.A. v. Husain*,
  291 F.R.D. 209 (N.D. Ill. 2013) ......................................................................... 11

*Shelton v. Am. Motors Corp.*,
  805 F.2d 1323 (8th Cir. 1986) ...................................................................... 11, 12

*St. Paul Guardian Ins. Co. v. Walsh Constr. Co.*,
  10 CV 10324, 2021 WL 4777337 (N.D. Ill. Oct. 13, 2021) ................................. 10

*Stafford Trading, Inc. v. Lovely*,
  No. 05-C-4868, 2007 WL 611252 (N.D. Ill. Feb. 22, 2007) ................................ 15

*U.S. Bank Nat'l Ass'n v. Londrigan, Potter & Randle, P.C.*,
  No. 15-cv-3195, 2018 WL 3097086 (C.D. Ill. Apr. 9, 2018) .............................. 8, 9

*Washtenaw Cnty. Employees' Ret. Sys. v. Walgreen Co.*,
  No. 15 C-3187, 2020 WL 13613270 (N.D. Ill. Sept. 25, 2020) ........................... 13

*WMH Tool Grp., Inc. v. Woodstock Int'l, Inc.*,
  No. 07-CV-3885, 2009 WL 89935 (N.D. Ill. Jan. 14, 2009) ............................... 14

*Zurich Am. Ins. Co. v. Superior Ct.*,
  155 Cal. App. 4th 1485 (2007) ............................................................................ 8

## Rules and Regulations

Fed. R. Civ. P. 26(b)(1) ................................................................................................ 5

## INTRODUCTION

On November 12, 2020, the Enterprise State Defendants[1] ("Defendants") served their Rule 26 Initial Disclosures, identifying Michael Hankinson as a *fact witness* who served in the role of *president and CEO* of defendant Delta Dental Insurance Company ("DDIC"). (*See* Defendants' Rule 26(a)(1) Initial Disclosures, at 2-3, attached hereto as Exhibit A.) In addition to this role, Mr. Hankinson also served as "*Corporate Secretary for Delta Dental of California and other Enterprise State Defendants*," and as "*director on the board of directors of Delta Dental of Delaware, and Chair of the board of directors of Delta Dental of West Virginia and Delta Dental of the District of Columbia*." (Hankinson Dec. [Dkt. No. 480-1] ¶ 6 (emphasis added).)

Given his wide assortment of senior functions across multiple defendants accused of engaging in a decades-long antitrust conspiracy, the Rule 26 Disclosures admitted that Mr. Hankinson was knowledgeable on ten broad categories central to this case. (*See* Ex. A, Defendants' Initial Disclosures, at 2-3.) For at least six of these ten topics, Defendants identified Mr. Hankinson as the *only* person having knowledge of the subject matter. Further, during document discovery so far, *Defendants have produced over 1,800 non-privileged documents on which Mr. Hankinson is the sender or a recipient*. Prior to February 2023, Defendants *never* identified Mr. Hankinson as having any legal function whatsoever, much less as an in-house attorney.

Given these undisputed facts, and Mr. Hankinson's central role as a business executive and board member for several Defendants, Defendants remarkably now seek to quash Mr. Hankinson's

---

[1]    The "Enterprise State Defendants" are a group of affiliated Delta Dental member companies that include Delta Dental Insurance Company ("DDIC"), Delta Dental of California, Delta Dental of Delaware, Delta Dental of the District of Columbia, Delta Dental of New York, Delta Dental of Pennsylvania, Delta Dental of Puerto Rico, and Delta Dental of West Virginia. Delta Dental Insurance Company, in turn, covers the territories of Alabama, Florida, Georgia, Louisiana, Mississippi, Montana, Nevada, Texas, and Utah.

deposition on the purported basis that in addition to his executive responsibilities, Mr. Hankinson served as an in-house attorney. But, of course, in-house attorneys regularly engage in a host of non-legal functions and non-privileged communications (as demonstrated by the fact that over 1,800 documents sent by or to Mr. Hankinson already have been produced). The Seventh Circuit "has never provided blanket immunity exempting attorneys from being deposed, nor made them a privileged class." *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, No. 09-cv-7666, 2013 WL 5274296, at *2 (N.D. Ill. Sept. 18, 2013). To the contrary, "[t]he attorney-client privilege protects only communications and is not a wholesale bar to a witness' accessibility." *Favala v. Cumberland Eng'g Co.*, 17 F.3d 987, 990 (7th Cir. 1994). Indeed, Defendants' motion relies almost entirely on a sleight of hand, attempting to pass off authority limiting depositions of ***outside trial counsel*** as somehow applicable to Mr. Hankinson, a dual-hatted in-house lawyer who also served as a senior business executive. Defendants' chicanery should be rejected.

In the alternative, Defendants ask this Court to compel Plaintiffs to provide, in advance of Mr. Hankinson's deposition, a list of topics upon which Plaintiffs intend to question Mr. Hankinson and fashion some nebulous "protocol" for addressing privilege issues. Defendants' demands in this regard are unsupported by any authority because there is none.

Deposing an in-house attorney who serves in both a legal and executive capacity is a common exercise. If Mr. Hankinson's counsel believes that a deposition question legitimately calls for privileged information (which Plaintiffs' counsel, as officers of the court, would not ask intentionally), they surely know how to object. "Parties can generally be expected to assert objections during the course of a deposition to protect against disclosure of privileged information." *Espejo v. Santander Consumer USA, Inc.*, No. 11-CV-8987, 2014 WL 6704382, at *2 (N.D. Ill. Nov. 25, 2014) (rejecting privilege claims as a basis to bar deposition). And both sides know how

to find the Court should any dispute need to be resolved. There is no reason to treat Mr. Hankinson differently than any other witness.

For all these reasons, Plaintiffs respectfully request that Defendants' motion for a protective order be denied and that the Court order that Mr. Hankinson be produced for deposition within two weeks of the Court's order disposing of Defendants' motion.

## BACKGROUND

Defendants served their Rule 26 Disclosures on November 12, 2020, identifying Mr. Hankinson as a relevant individual and potential fact witness. Defendants represented that Mr. Hankinson was "DDIC President and CEO," omitting any mention of legal roles he might hold. Defendants disclosed that Mr. Hankinson had "knowledge on the following topics, among others":

> (A) DDIC's business and organization; (B) DDPA's efforts to support the Delta Dental Member Companies' multistate and national group accounts; (C) the value of the Delta Dental brand; (D) the size and strength of DDIC's provider networks and the importance of a national provider network in order to sell to national accounts; (E) DDIC's sales to groups and individual policyholders; (F) DDIC's competition with other dental insurance providers and other purchasers of dental goods and services; (G) the ability of DDIC to sell non-Delta Dental brand insurance products; (H) DDIC's efforts to expand dental coverage, increase the availability of dental care, and improve oral health; (I) DDPA's membership guidelines and standards; and (J) the charitable programs and community benefits provided by the Enterprise State Defendants.

(*See* Ex. A, Defendants' Rule 26(a)(1) Initial Disclosures, at 2-3.) Defendants did not identify *any* other individual as having knowledge of the matters related to DDIC contained in subparts A, D, E, F, G, and H above. (*Id*. at 2-10.) Mr. Hankinson also held a number of other senior executive roles. He served as "Corporate Secretary for Delta Dental of California and other Enterprise State Defendants," and as "director on the board of directors of Delta Dental of Delaware, and Chair of the board of directors of Delta Dental of West Virginia and Delta Dental of the District of Columbia." (Hankinson Dec. [Dkt. No. 480-1] ¶ 6.)

Defendants' document production has confirmed that Mr. Hankinson is an important fact witness. In Defendants' productions, Mr. Hankinson was listed as the author or primary recipient (*i.e.*, in the "to" or "from" field) of 1,121 unredacted e-mails; Mr. Hankinson also was copied (*i.e.* "cc'd") on an additional 295 unredacted e-mails. (*See* Declaration of J. Handlin ¶ 3, attached hereto as Exhibit B.) Mr. Hankinson was the author or recipient of another 385 e-mails that contain varying levels of redactions. (*Id.*) In total, Mr. Hankinson is the author or recipient of over 1,800 non-privileged, responsive e-mails produced by Defendants. (*Id.*)

Production documents demonstrate that Mr. Hankinson played a central role in the alleged conspiracy. For example, Mr. Hankinson discussed ███████████████████████████ ██████████████████████████████████████████████████ (*See* Oct. 22, 2019 e-mail from Hankinson, attached hereto as Exhibit C.) ████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████ (*See, e.g.,* Sept. 24, 2015 e-mail to *inter alia* Hankinson, attached hereto as Exhibit D.)

Further, the only two Enterprise Defendant witnesses deposed to date, Sarah Chavarria, the President of Delta Dental of California, and Mohammadreza Navid, its Senior Vice President and Chief Relationship and Business Development Officer, ██████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████████ (*See* Chavarria Tr. 42:15-45:2, 47:18-48:13, 49:2-13, attached hereto as Exhibit E; Navid Tr. 39:7-42:5, attached hereto as Exhibit F.)

Given Mr. Hankinson's importance as a fact witness, on January 31, 2023, Plaintiffs requested potential dates for his deposition. In February 3, 2023 correspondence, Defendants first

raised that one of their witnesses was a "dual-hatted" in-house counsel, but did not identify Mr. Hankinson as that witness. (Feb. 3, 2023 Letter from H. Ullman at 2, n.2, attached hereto as Exhibit G.) On February 21, 2023, Defendants offered possible dates for Mr. Hankinson's deposition and, that same day, Plaintiffs accepted the proposed date of March 30, 2023.

In the course of scheduling Mr. Hankinson's deposition, Defendants demanded that Plaintiffs provide them a list of deposition topics in advance of the deposition and otherwise agree on some sort of procedure to address privilege objections. (*See* Feb. 22, 2023 e-mail from H. Ullman, attached hereto as Exhibit H.) The parties met and conferred on February 27, 2023, at which point Plaintiffs rejected Defendants' unfounded demands. Defendants then went silent and never sought to take Mr. Hankinson's deposition off calendar. Then, two-and-a-half weeks later, on March 17, 2023, Defendants filed this Motion. This opposition follows.

## ARGUMENT

Parties are permitted to obtain discovery on "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In antitrust cases, "courts generally take an expansive view of relevance and permit broad discovery" of defendants because "the burden or cost of providing the information sought is less weighty a consideration than in other cases." *Kleen Prods. LLC v. Packaging Corp. of Am.*, No. 10 C 5711, 2012 WL 4498465, at *13 (N.D. Ill. Sept. 28, 2012). This is because "direct evidence of an anticompetitive conspiracy is often difficult to obtain, and the existence of a conspiracy frequently can be established only through circumstantial evidence." *Id.*

The party seeking a protective order bears the burden of proof to show that good cause exists for its issuance. *See, e.g., Pfizer Inc. v. Apotex Inc.*, 744 F. Supp. 2d 758, 762 (N.D. Ill. 2010) (denying motion for protective order); *ED&F Cap. Markets Ltd. v. JVMC Holdings Corp.*, 335 F.R.D. 174, 177 (N.D. Ill. 2020) (same). Precluding the deposition of a witness with relevant

knowledge requires the moving party to bear the heavy burden of demonstrating good cause. *See, e.g.*, *Boyd v. Lazer Spot, Inc*., No. 19-cv-8173, 2022 WL 2865881, at \*4 (N.D. Ill. July 6, 2022) (denying motion for a protective order of a CEO's deposition and holding that "a party resisting a duly noticed deposition generally has the burden to demonstrate good cause for precluding the deposition"). The Court analyzes a motion to quash the deposition of in-house counsel (as opposed to outside trial counsel) as any other motion for a protective order, requiring "particularized and specific demonstrations of fact." *Caponigro v. Navistar Int'l Transp. Corp.*, No. 93-cv-647, 1994 WL 233772, at \*2 (N.D. Ill. May 18, 1994).

I. **MR. HANKINSON IS A FACT WITNESS WHO HAS SERVED AS A SENIOR EXECUTIVE FOR MULTIPLE DEFENDANTS AND WILL TESTIFY CONCERNING UNIQUE, NON-PRIVILEGED INFORMATION.**

There is no credible dispute that Mr. Hankinson has relevant, unique, and non-privileged information to share at deposition, as demonstrated in at least three ways.

*First*, Defendants identified Mr. Hankinson as a fact witness in their Rule 26 Disclosures on November 12, 2020, stating that he was "DDIC President and CEO" with knowledge on at least ten different topics. Contrary to Defendants' unsupported assertions that Mr. Hankinson's information is cumulative or can be better obtained through other witnesses, Mr. Hankinson is the *only* person identified by Defendants as knowledgeable on six of the ten topics.

Like their Rule 26 Disclosures, Defendants' Motion does not seriously dispute that Mr. Hankinson has discoverable information. (*See, e.g.,* Mem. at 11 ("assuming, *arguendo*, that Mr. Hankinson has relevant, non-privileged testimony to offer …."). ) Indeed, in addition to serving as "president of DDIC," Mr. Hankinson has also been a "Corporate Secretary for Delta Dental of California and other Enterprise State Defendants," and a "director on the board of directors of Delta Dental of Delaware, and Chair of the board of directors of Delta Dental of West Virginia and Delta Dental of the District of Columbia." (Hankinson Dec. [Dkt. No. 480-1] ¶ 6.) It is

difficult to conceive of a more significant witness in a case alleging an antitrust conspiracy than a senior executive who served in high-level roles across multiple defendants.

*Second*, document productions demonstrate Mr. Hankinson's extensive involvement, appearing as sender or recipient on over 1,800 documents produced by Defendants. These documents include discussions of ███████████████████

████████████████████████████████████

████████████████████████████████████

███████████████ (*See* Exs. C and D.)

*Third*, depositions to date have confirmed that Mr. Hankinson is a necessary witness. For example, ████████████████████████████

████████████████████████████████████

████████████████████████████████████

███████████ (Ex. E, Chavarria Tr. 44:5-9; Ex. F, Navid Tr. 40:7-10.)

## II. MR. HANKINSON'S ROLE AS IN-HOUSE COUNSEL DOES NOT PROVIDE A BASIS TO PRECLUDE HIS DEPOSITION

### A. Plaintiffs Have the Right to Mr. Hankinson's Deposition Pursuant to Rule 26.

Contrary to Defendants' contention, this Circuit does not disfavor depositions of counsel as a matter of law. (Mem. at 7.) The Seventh Circuit has held the opposite, stating that "[t]he attorney-client privilege protects only communications and is not a wholesale bar to a witness' accessibility." *Favala*, 17 F.3d at 987. The Seventh Circuit "has never provided blanket immunity exempting attorneys from being deposed, nor made them a privileged class." *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, 2013 WL 5274296, at *2. Courts within this Circuit routinely have allowed parties to depose attorneys, including in-house counsel. *See, e.g.*, *Quality Croutons*, No. 05-cv-4928, 2006 WL 2375460, *2 (N.D. Ill. Aug. 14, 2006) (granting motion to

compel deposition of defendant's in-house attorneys); *U.S. Bank Nat'l Ass'n v. Londrigan, Potter & Randle, P.C.*, No. 15-cv-3195, 2018 WL 3097086, at *3 (C.D. Ill. Apr. 9, 2018) (denying motion for protective order and holding that "Plaintiffs have the right to depose the [a]ttorneys in this case on [] non-privileged matters"); *Powers v. Bd. of Trustees of the Univ. of Illinois*, No. 08-cv-2267, 2010 WL 3834441, at *4 (C.D. Ill. Sept. 23, 2010) (denying motion for protective order where deponent-attorney "ha[d] information regarding the occurrences complained of"); *Caponigro*, 1994 WL 233772, at *2 (denying motion to bar depositions of four in-house counsel).

This is because not everything—and oftentimes not most—of what an in-house lawyer does is privileged. As a result, "communications involving in-house counsel might well pertain to business rather than legal matters," "[t]he privilege does not protect an attorney's business advice," and corporations "may not conduct their business affairs in private simply by staffing a transaction with attorneys." *City of Roseville Employees' Ret. Sys. v. Apple Inc*., No. 19-cv-2033, 2022 WL 3083000, at *9 (N.D. Cal. Aug. 3, 2022). "[O]therwise routine, nonprivileged communications between corporate officers or employees transacting the general business of the company do not attain privileged status solely because in-house or outside counsel is 'copied in' on correspondence or memoranda." *Zurich Am. Ins. Co. v. Superior Ct*., 155 Cal. App. 4th 1485, 1504 (2007).

Defendants cite *qad.inc v. ALN Assocs., Inc*., 132 F.R.D. 492, 495 (N.D. Ill. 1990), ostensibly for the proposition that the deposition of a lawyer may be limited if the testimony might be obtained from a non-lawyer. (Mem. at 12.) But *qad.inc* militates in favor of allowing Mr. Hankinson's deposition to proceed; the Court rejected a motion for a protective order to preclude the deposition of an attorney, stating it was "inappropriate to address with a blanket protective order the wholly speculative problems that might be (but are unlikely to be) posed by [the lawyer's deposition]." *qad.inc*, 132 F.R.D. at 495. The Court held that there is a "misperception as to the

general impermissibility of any discovery targeting lawyers," and even opined that the moving party "should have subsided by withdrawing its motion." *Id*. at 493. The same is true here.

Courts in this Circuit regularly have rejected the argument that non-specific, *potential* privilege issues can justify barring the deposition of an attorney. Instead, pre-deposition privilege claims are "premature," and "preventing the taking of a deposition on [anticipated privilege] grounds would tend to limit or fix the scope of the examination before it began and would usurp the court's role in deciding whether certain questions seek privileged information." *Hunt Int'l Res. Corp. v. Binstein*, 98 F.R.D. 689, 690 (N.D. Ill. 1983); *see also Armada (Singapore) Pte Ltd v. Amcol Int'l Corp.*, 160 F. Supp. 3d 1069, 1073 (N.D. Ill. 2016) (ordering that general counsel's "deposition will proceed like any other deposition of any other person," and holding that "if one does not know the question, one cannot anticipatorily ask that no questions be asked").

Unsurprisingly, the standard approach is to allow the deposition to proceed with attorneys raising appropriate question-specific privilege objections during the deposition. *See U.S. Bank Nat'l Ass'n*, 2018 WL 3097086, at *3 (ordering that deposition proceed and noting: "If the Attorneys believe that a question calls for privileged information, they may object during the normal course of deposition."); *qad.inc*, 132 F.R.D. at 495 (ordering that deposition proceed); *Caponigro*, 1994 WL 233772, at *2 (allowing depositions to proceed; the proper course is for "attorneys to raise their claims of privilege if and when it becomes necessary"); *Kaiser v. Mut. Life Ins. Co. of N.Y.*, 161 F.R.D. 378, 380 (S.D. Ind. 1994) ("[D]eponents are expected . . . to assert their objections during the deposition and to allow questioning parties to develop circumstantial facts in order to explore the propriety of the assertion of the privilege, immunity, or other objection.").

As these authorities confirm, Mr. Hankinson is a proper deponent in this case. Plaintiffs do not seek to depose Mr. Hankinson based on knowledge he gained as a result of the filing of this lawsuit. He is not counsel of record in this lawsuit. Plaintiffs intend to question Mr. Hankinson on factual issues about which he has non-privileged information – just as Defendants disclosed in their Rule 26 Disclosures. This includes, but is not limited to, the ten listed topics "among others," according to Defendants themselves, and issues raised in over 1,800 produced documents.[2]

As a last gasp, Mr. Hankinson asserts that he "spend[s] over 98%" of his time on his "duties as in-house counsel." (Hankinson Dec. ¶ 7 [Dkt. No. 480-1].) Mr. Hankinson does not specify any time period over which this has been true. It strains credulity to imagine that Mr. Hankinson could possibly have accomplished his duties as President and CEO of DDIC, Corporate Secretary for Delta Dental of California and other Enterprise State Defendants, and director or chairman of the board of three other Delta Dental entities in only 2% of his time. (*Id.* ¶ 6.) And even if true,

---

[2] For this reason, Mr. Hankinson's situation is different from cases that Defendants cite where protective orders were granted for depositions of in-house counsel who had no factual knowledge of the case apart from managing the litigation itself. *See Lincoln Nat'l Life Ins. v. TCF Nat'l Bank*, No. 10 C 6142, 2011 WL 13119407, at *1 (N.D. Ill. Dec. 12, 2011) (protective order granted for associate general counsel who "had no role in the case other than as a lawyer"); *St. Paul Guardian Ins. Co. v. Walsh Constr. Co.*, No. 15 CV 10324, 2021 WL 4777337, at *5 (N.D. Ill. Oct. 13, 2021) (protective order granted for in-house lawyer who provided only legal advice and did not render any advice on business issues). In the only case where the Court issued an order postponing the deposition of in-house counsel, the Court left open revisiting the question of whether the attorney should be deposed, and there was no evidence that the counsel possessed unique factual knowledge, unlike Mr. Hankinson here. *See Espejo*, 2014 WL 6704382, at *3. Defendants' remaining cited cases are inapposite because they involved efforts to depose the opposing party's outside trial counsel. *See, e.g.*, *M & R Amusements Corp. v. Blair*, 142 F.R.D. 304, 305 (N.D. Ill. 1992) (rejecting deposition of party's trial counsel); *In re Plasma-Deriv. Protein Therapies Antitrust Litig.*, 2013 WL 5274296, at *2 (rejecting plaintiff's effort to depose members of law firm serving as defendant's trial counsel, and expressly finding that "all" the information sought was privileged); *Loendorf v. PeopleConnect, Inc.*, No. 21 C 51, 2022 WL 2867174, at *8 (N.D. Ill. July 21, 2022) (rejecting efforts to sit plaintiff's trial counsel for deposition, but allowing limited written deposition of plaintiff's law firm); *Harriston v. Chicago Trib. Co.*, 134 F.R.D. 232, 233 (N.D. Ill. 1990) (rejecting effort to depose outside trial counsel).

as described above, Mr. Hankinson's business activities as in-house counsel are not privileged. *See, e.g.*, *United States v. Evans*, 113 F.3d 1457, 1463 (7th Cir. 1997) (holding that privilege does not apply, *inter alia*, to business roles); *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 217 (N.D. Ill. 2013) (recognizing that "the privilege is limited to situations in which the attorney is acting as a legal advisor—business and financial advice are not protected").

### B. The *Shelton* Test Does Not Bar Mr. Hankinson's Deposition.

Perhaps realizing that their position is specious in this Circuit, Defendants turn to a nearly four-decade-old out-of-circuit case, *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986). (Mem. at 8-11.) But this alternate argument also fails for three reasons: (i) it is not binding law in this Circuit; (ii) it is limited to opposing counsel involved in trial preparation, and does not apply to in-house counsel with factual knowledge independent of the lawsuit; and (iii) even if it did apply, application of *Shelton's* factors would not preclude Mr. Hankinson's deposition.

***Shelton* is not binding law.** Neither the Supreme Court nor the Seventh Circuit has adopted the *Shelton* rule, and courts in this Circuit have criticized it. *See, e.g.*, *aaiPharma, Inc. v. Kremers Urb. Dev. Co.*, 361 F. Supp. 2d 770, 774 (N.D. Ill. 2005) (denying motion for protective order and noting that the some courts in this Circuit have declined to follow *Shelton*). There is no basis to apply a test never adopted by the Seventh Circuit, when there is abundant law from within this Circuit regarding the propriety of depositions of in-house counsel, as discussed in Section II.A, *supra*.

***Shelton* is inapposite.** To the extent that this Court were to consider *Shelton*, Mr. Hankinson falls outside its ambit because *Shelton* is generally applied only to depositions of outside counsel involved in trial preparation. *Shelton*, 805 F.2d at 1327; *see also Armada*, 160 F. Supp. 3d at 1071 (holding that motion to quash is "unconvincing" because it "relies exclusive[ly]

on a line of cases descending from a 30-year-old Eighth Circuit case [*Shelton*]," whose "various hurdles set up . . . in order to depose opposing counsel, are inapplicable here"). Even the Eighth Circuit has clarified that *Shelton* "was intended to guard against the harassing practice of deposing opposing counsel . . . ." *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 729-30 (8th Cir. 2002). In the present case, Mr. Hankinson's role is not that of an "opposing counsel" with trial responsibilities but, rather, as the President and CEO of a defendant, DDIC, and in other executive functions. Such fact witnesses are proper deponents. *See, e.g.*, *Armada*, 160 F. Supp. 3d at 1071 (denying motion to quash subpoena and ordering that general counsel's deposition "proceed like any other deposition of any other person"); *Kaiser*, 161 F.R.D. at 382 ("[I]f an attorney is a witness of or actor in prelitigation conduct, he may be deposed the same as any other witness."). Mr. Hankinson's knowledge qualifies him as a fact witness, outside of *Shelton*'s ambit.

*Shelton's three-factor test does not exempt Mr. Hankinson from testifying.* Even if the Court were to apply *Shelton*, Mr. Hankinson should still be required to submit to a deposition. *Shelton* provides that depositions of opposing counsel "should be limited to where the party seeking to take the deposition has shown that: (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Shelton*, 805 F.2d at 1327.

Mr. Hankinson satisfies all three factors. Mr. Hankinson has been identified as a "person with knowledge" in Defendants' Rule 26 Disclosures on at least ten different topics and the *sole* knowledgeable individual regarding six of these. (Ex. A, Defendants' Rule 26(a)(1) Initial Disclosures, at 2-3.) Other deponents have confirmed that Mr. Hankinson has unique knowledge. Mr. Hankinson's information is relevant, as demonstrated by him appearing as the sender or recipient on 1,800 produced documents. His testimony is particularly critical given that this is an

antitrust case and Mr. Hankinson served in an executive role for multiple defendants. *See Kleen Prods.*, 2012 WL 4498465, at \*13 ("[D]irect evidence of an anticompetitive conspiracy is often difficult to obtain" and "frequently can be established only through circumstantial evidence.").

Even under *Shelton*, Mr. Hankinson's deposition is appropriate and should be required.

## III.    MR. HANKINSON'S DEPOSITION IS NOT DUPLICATIVE OR CUMULATIVE.

Defendants' final argument is that Mr. Hankinson's testimony is cumulative or duplicative. (Mem. at 11.) This claim is demonstrably false, ███████████████████████████

████████████████████████████ But regardless, witnesses are not fungible, and the value of their testimony can often be determined only after the rigors of actual questioning. *See, e.g.*, *Washtenaw Cnty. Employees' Ret. Sys. v. Walgreen Co.*, No. 15 C-3187, 2020 WL 13613270, at \*2 (N.D. Ill. Sept. 25, 2020) (refusing to grant protective order because "testimony from [other executives] . . . do not make [his] deposition worthless, duplicative or cumulative"); *City of Rockford v. Mallinckrodt ARD, Inc.*, No. 20 CV 50056, 2020 WL 1675593, at \*3 (N.D. Ill. Apr. 6, 2020) ("while others may share [the witness's] knowledge on some subjects," that does not render "this deposition [] unreasonably cumulative or duplicative").

Furthermore, Defendants' speculation that Mr. Hankinson's testimony might duplicate that of unnamed "numerous witnesses" (Mem. at 5-6) is unsupported by any specific evidence. The burden to establish good cause warranting a protective order is on Defendants, and these generalizations do not carry that burden. *See Caponigro*, 1994 WL 233772, at \*2 (holding that to issue a protective order precluding the deposition of in-house counsel, the party seeking the protective order must make "particularized and specific demonstrations of fact").

Only one of Defendants' cited cases addresses allegations that the deposition testimony of in-house counsel might be cumulative or duplicative. (Mem. at 12.) But even that one case is readily distinguishable because in *B.F.G. by R.G. v. Blackmon*, No. 08 C 1565, 2008 WL 11517594,

at *3 (N.D. Ill. Dec. 9, 2008), the defendant admitted that all the information she sought from plaintiffs' trial counsel could be obtained by reviewing the transcript of an administrative hearing.[3]

## IV. DEFENDANTS' REQUEST FOR DETAILED DEPOSITION TOPICS OR A PROTOCOL IS UNPRECEDENTED AND INAPPROPRIATE.

In the alternative to barring Mr. Hankinson's deposition, Defendants request that the Court "at a minimum, require Plaintiffs to provide Defendants a detailed list of expected topics for the Hankinson deposition so that Defendants and this Court can evaluate whether Mr. Hankinson has any relevant, non-privileged testimony to offer." (Mem. at 13.) Defendants also ask the Court for some vague "protocol" to address any privilege issues that may arise during the deposition. (*Id.*)

Defendants do not cite a single authority for this unusual request, as there is none. In-house counsel are deposed regularly in complex commercial litigation with no special procedures. "Parties can generally be expected to assert objections during the course of a deposition to protect against disclosure of privileged information." *Espejo*, 2014 WL 6704382, at *2 (refusing to bar deposition); *see also* cases cited supra at 9.

While Defendants speculate that "defense counsel would need to parse in real time virtually each and every deposition question to determine whether his answers could or would reveal privileged or attorney work product information," Defendants provide only two examples which do not implicate *any* privileged information. Defendants' first example concerns "'control plan' disputes *between* Delta Dental Member Companies (that is, disputes about which company is responsible for bidding on which national accounts)." (Mem. at 4.) But communications between and among different member

---

[3] Defendants' other cases on this point are inapposite. *Howard v. Securitas Sec. Servs., USA Inc.*, 630 F. Supp. 2d 905, 910 (N.D. Ill. 2009), involved the requested deposition of a law firm administrator to determine if a law firm had been improperly soliciting class members. The other two cases involved efforts to depose trial counsel, with the issue being whether information could be obtained elsewhere rather than through current counsel of record in the case. *WMH Tool Grp., Inc. v. Woodstock Int'l, Inc.*, No. 07-CV-3885, 2009 WL 89935, at *1 (N.D. Ill. Jan. 14, 2009); *Miyano Mach. USA, Inc. v. Miyano Hitec Mach., Inc.*, 257 F.R.D. 456, 465 (N.D. Ill. 2008).

companies are **never** privileged—*see Evans*, 113 F.3d at 1462 (attorney-client privilege does not shield communications with third parties)—and ████████████████████████████

████████████████████████████[4]

Defendants' second example of potential privilege objections is even more flimsy: "if Plaintiffs wish to inquire about the structure of the DDC Enterprise and show Mr. Hankinson an organization, ownership or control chart of the various entities and affiliates and ask him why the structure is the way it is or what certain aspects of the structure mean …." (Mem. at 4.)  It is difficult to imagine a subject **less** likely to involve privileged information than an organization chart or an explanation of the structure of a corporate defendant.  *See, e.g.*, *Stafford Trading, Inc. v. Lovely*, No. 05-C-4868, 2007 WL 611252, at *8 (N.D. Ill. Feb. 22, 2007) (finding organizational chart was a non-privileged business document).[5]  Defendants' meager descriptions of potential privilege disputes provide no reason either to preclude Mr. Hankinson's deposition or to require disclosure of deposition topics or other protocol.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Defendants' motion for a protective order be denied, and that Mr. Hankinson be required to appear for his deposition within two weeks of the Court disposing of this motion.

---

[4]  *See, e.g.,* Hughes Dep. Tr. 125:12-126:25 (compliance manager of DDPA ████████████); Stich Dep. Tr. 154:18-161:19 (former CFO and COO of DDPA ████████ ████); Glogowski Dep. Tr. 65:5-69:18 (former vice-president of Delta Dental Illinois ████████); Glossy Dep. Tr. 83:4-84:15 (former president and CEO of Delta Dental Arizona and Delta Dental Illinois ████████); Herbert Dep. Tr. 65:5-72:16 (former CFO of Delta Dental Kansas ████████ ████), attached hereto as Exhibits I-M, respectively.

[5]  *See also* Vinci Tr. 57:15-64:18 (████████████████████████████ ████████); Fensom Tr. 55:10-58:7(████████████████████████████ ████████); Herbert Tr. 21:10-22:5 (████████████████████████████ ████████), attached hereto as Exhibits N-P, respectively.

DATED: April 5, 2023                    Respectfully Submitted,

**QUINN EMANUEL URQUHART &**            **WOLLMUTH MAHER & DEUTSCH LLP**
**SULLIVAN, LLP**

By:   */s/ Leonid Feller*                By:   */s/ Ronald J. Aranoff*
Leonid Feller, P.C.                     Ronald J. Aranoff
Bevin Brennan                          Jay S. Handlin (*pro hac vice forthcoming*)
191 N. Wacker Drive, Suite 2700         William J. Hagan (*pro hac vice forthcoming*)
Chicago, Illinois 60606                 500 Fifth Avenue, 12th Floor
Telephone: (312) 705-7400               New York, New York 10110
leonidfeller@quinnemanuel.com           Telephone: (212) 382-3300
bevinbrennan@quinnemanuel.com           raranoff@wmd-law.com
                                        jhandlin@wmd-law.com
                                        whagan@wmd-law.com

*Interim Co-Lead Class Counsel*          *Interim Co-Lead Class Counsel*

## CERTIFICATE OF SERVICE

I, Leonid Feller, an attorney, hereby certify that on April 5, 2023, I caused a true and correct copy of the foregoing **PLAINTIFFS' OPPOSITION TO ENTERPRISE STATE DEFENDANTS' MOTION FOR A PROTECTIVE ORDER AS TO DEPOSITION OF MICHAEL HANKINSON** to be filed and served electronically via the Court's CM/ECF system. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and separately via e-mail to counsel of record. Parties may access this filing through the court's CM/ECF System.

*/s/ Leonid Feller*