# EXHIBIT A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE DELTA DENTAL ANTITRUST LITIGATION<br><br>*This document relates to: All ACTIONS* | Civil Action No. 1:19-cv-06734<br><br>MDL No. 2931<br><br>Honorable Elaine E. Bucklo |

### DECLARATION OF CRAIG M. BARGHER

I, Craig M. Bargher, pursuant to 28 U.S.C. § 1746, declare as follows:

1.  I am over the age of eighteen, suffer from no legal disabilities, have personal knowledge of the facts set forth in this Declaration, and, if called as a witness, could testify competently hereto.

2.  I am a member of the law firm of Chittenden, Murday & Novotny LLC, in Chicago, Illinois. I am outside counsel to non-party Ameritas Life Insurance Corporation ("Ameritas"). I submit this Declaration in support of Ameritas' response to Defendants' Motion to Compel Ameritas Life Insurance Corporation to Comply with Subpoena ("Motion to Compel Ameritas").

3.  I met and conferred with Allison Reimann, counsel for Delta Dental of Wisconsin, Inc. ("DDWI's counsel") on May 19, 2022; July 20, 2022; August 10, 2022; October 17, 2022; November 15, 2022; November 28, 2022; December 14, 2022; and April 19, 2023.

4.  On May 19, 2022, DDWI's counsel stated that she thought the Protective Order in this matter adequately protects the confidentiality of the claims data sought in Request No. 1 in the subpoena. DDWI's counsel asserted that in-house counsel are company employees and therefore would not be allowed to view documents designated as Outside Attorneys' Eyes Only.

1

DDWI's counsel stated she did not see a need to modify the Protective Order. I did not state that I agreed with her on these assertions. For DDWI's highest-priority requests, DDWI's counsel described the categories of documents, other than Request Nos. 1 and 2, as "data-oriented requests," including Request Nos. 21 and 27; "analysis/study requests," including Request Nos. 4 through 8; "network-related requests," including Request Nos. 12 and 13. For Request No. 21 in the "data-oriented requests," DDWI's counsel stated DDWI was not looking for "every scrap of paper," but rather "management level presentations" and "executive board minutes." DDWI's counsel stated DDWI was not looking for every subscriber in every zip code. For Request No. 27 in the "data-oriented requests," DDWI's counsel stated DDWI sought "executive level reports" in the ordinary course of business. Regarding Request Nos. 4 through 8 in the "analysis/study" category, DDWI's counsel stated DDWI was seeking the "big picture" of factors for consideration in setting reimbursement rates. Regarding Request Nos. 12 and 13 in the "network-related" category, DDWI's counsel stated DDWI was looking for "higher-level analysis."

5. On July 20, 2022, when we discussed DDWI seeking claims data from Milliman, DDWI's counsel asserted Milliman would not be an adequate substitute, but did not elaborate.

6. On August 10, 2022, DDWI's counsel also noted Milliman is "reluctant" to produce information, but DDWI's counsel did not elaborate.

7. In my October 14, 2022 letter to DDWI's counsel, I noted, in part, that the subpoena "seeks documents related to nearly every aspect of Ameritas' business with respect to dental providers and dental goods and services over the course of seven years." I also noted that Ameritas explained its specific bases for various objections, and gave specific examples. I also noted that when I served Ameritas' objections I "raised concerns with the three Agreed Orders attached to the subpoena ([ECF Nos.] 348, 351, and 330) and identified, by way of example, some proposed

revisions to the Agreed Protective Order regarding confidential materials ([ECF No.] 351)." I also noted that many of the subpoena's requests seek documents beneficial to Ameritas' competitors. I also reminded DDWI's counsel that she rejected the idea of seeking any modifications to protective orders in this matter. In addition, I confirmed that Ameritas does not collect the information requested in Request Nos. 23 through 26. I also noted that I had explained previously that DDWI could seek Ameritas' claims data through other sources, such as Milliman and Fair Health, and that DDWI's counsel's response, without any elaboration, was that Milliman is "reluctant" to produce information. I noted that DDWI's counsel also asserted, without a "detailed explanation," that DDWI did not believe Fair Health would be an "adequate substitute." Regarding Request No. 6, I reminded DDWI's counsel that Ameritas suggested accessing each state's websites, and that DDWI's counsel stated a public records request was sent to the Nebraska Department of Insurance, but that DDWI had not received a response. Regarding Request No. 21, I reminded DDWI's counsel that Ameritas suggested DDWI obtain reports from the National Association of Dental Plans ("NADP"). I noted that DDWI's counsel said she did not "believe" the NADP's data was "as detailed," and that she asked Ameritas for copies of information sent to the NADP. In addition, I confirmed Ameritas determined it has "no existing 'higher-level reports' regarding Request Nos. 4 and 5. I also denied DDWI's assertion that no "meaningful progress" was made in the meet and confers, and denied that Ameritas' position would not be dictated by the decisions of other carriers who had also been subpoenaed. I further noted that "[t]he process of obtaining information demanded by [DDWI's] requests involves the input of various Ameritas employees and takes time away from other work they have and thus necessarily requires working with their schedules[.]" (*See* Doc. #520-16, PageID #:8389-8391).

8. On October 17, 2022, DDWI's counsel rejected the idea of obtaining blinded claims data that would not show that the data came from Ameritas. DDWI's counsel said that idea was not "workable" because DDWI's experts need unblinded data for "running regressions," but did not elaborate. Regarding Request No. 13, I confirmed Ameritas does not possess documents responsive to Request Nos. 13(b), (c), and (d).

9. On December 14, 2022, for the first time, DDWI's counsel said DDWI would be willing to discuss the option of having Milliman provide blinded raw claims data, and asked if other carriers would be willing to participate. DDWI's counsel also said DDWI would be willing to table Request No. 4 pending the discussion of Milliman providing blinded raw claims data. I informed DDWI's counsel that Ameritas possesses no existing reports regarding Request Nos. 4 and 5, and no existing documents regarding Request No. 7(a). I also informed DDWI's counsel that Ameritas suggested checking with Network 360 independently regarding Request No. 11, and that Ameritas possesses no existing reports from that source. I also explained to DDWI's counsel that Ameritas noted there are no existing documents for Request No. 28(d) ("Documents sufficient to show Your annual capital reserves for dental coverage (or total capital reserves to the extent not available for dental coverage alone), including but not limited to Documents relating to: … (d) how Your capital reserves impact Your credit rating (*e.g.*, AM Best)"), because credit agencies do not provide such information.

10. In my February 28, 2023 letter to DDWI's counsel, I explained that Ameritas is willing to allow Milliman to produce Ameritas' claims data, in blinded form only, in response to Request No. 1, conditioned on the agreement of at least two of the other carriers who have been subpoenaed in this litigation to do the same. I also informed DDWI's counsel that Ameritas committed to produce, by April 4, 2023, for the time period of January 1, 2014 through December

31, 2020: (1) in response to Request No. 21, the NADP Enrollment Reports in Ameritas' possession; (2) in Response to Request No. 6, the Ameritas Life Insurance Corporation rate manuals in its possession; (3) in response to Request No. 27, the Consolidated GAAP Statements its possession (I noted that those statements would be redacted for all information except for the rows and columns that would provide the after-tax profit numbers to generate a percentage of premium dollars that constitute profit); and (4) in Response to Request No. 28, Ameritas' annual reports to a state insurance department(s) in its possession. (*See* Doc. #520-17, PageID #:8393-8394).

11. On March 3, 2023, I received an email from DDWI's counsel. In this email, DDWI's counsel backtracked on DDWI's previous position that they would be willing to discuss the option of having Milliman provide blinded raw claims data. (*See* Doc. #520-18, PageID #: 8396).

12. In my March 10, 2023 letter to DDWI's counsel, I reiterated Ameritas' objection to the relevance claims data requested in Request No. 1, and noted "that Request No. 1 seeks documents and information that are proprietary, non-public, and that contain sensitive business, commercial, or trade secret information." I noted that such information "would clearly benefit Ameritas' business competitors." Further, I summarized my discussions with DDWI's counsel: in late November 2022, DDWI's counsel first rejected the notion of blinded claims data, then, in mid-December 2022 DDWI's counsel was willing to discuss the option of Milliman providing blinded raw claims data, and, finally, in the March 3, 2023 email, DDWI's counsel was "unwilling to agree to a blinded claims data production" at all. I further noted that Ameritas stood on its objections to the subpoena, but would produce certain documents as previously described. (*See* Doc. #520-19, PageID #:8400-8402).

13. Although our firm was unable to produce the documents described in my February 28, 2023 letter by April 4, 2023, on April 19, 2023, our firm produced to DDWI's counsel, for the period of January 1, 2014 through December 31, 2020, the following documents: (1) 485 pages of NADP reports, in response to Request No. 21, labeled as "Highly Confidential – (Outside) Attorney's Eyes Only – Subject to Protective Order;" and (2) 2,672 pages of annual statements to the Nebraska Insurance Department, in response to Request No. 28, also labeled as "Highly Confidential – (Outside) Attorney's Eyes Only – Subject to Protective Order."

14. On April 21, 2023, our firm produced to DDWI's counsel, for the period of January 1, 2014 through December 31, 2020, the following documents: 1,303 pages of Consolidated GAAP Statements, in response to Request No. 27, labeled as "Highly Confidential – (Outside) Attorney's Eyes Only – Subject to Protective Order" and redacted for all information except for the rows and columns that provide the after-tax profit numbers to generate a percentage of premium dollars that constitute profit.

15. On April 24, 2023, our firm produced to DDWI's counsel, for the period of January 1, 2014 through December 31, 2020, the following documents: 4,383 pages of Ameritas Life Insurance Corporation's rate manuals, in response to Request No. 6, labeled as "Highly Confidential – (Outside) Attorney's Eyes Only – Subject to Protective Order" and redacted for vision and hearing information.

Executed on May 10, 2023  /s/ *Craig M. Bargher*
Craig M. Bargher