# EXHIBIT B

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE DELTA DENTAL ANTITRUST LITIGATION | Civil Action No. 1:19-cv-06734 |
| | MDL No. 2931 |
| *This document relates to: ALL ACTIONS* | Honorable Elaine E. Bucklo |

### DECLARATION OF JIM P. BAKER, FSA, MAAA

I, Jim P. Baker, FSA, MAAA, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I am over the age of eighteen, suffer from no legal disabilities, have personal knowledge of the facts set forth in this Declaration, and, if called as a witness, could testify competently thereto.

2.      I submit this Declaration in support of Ameritas Life Insurance Corp.'s Response in Opposition to Defendants' Motion to Compel Ameritas Life Insurance Corp. to Comply with Subpoena and Ameritas' joining of Guardian Life Insurance Company of America's Motion to Quash or Modify Third-Party Subpoena.

3.      I am employed by Ameritas Life Insurance Corp. ("Ameritas") as Second Vice President, Actuarial. I have been employed as Second Vice President, Actuarial since April 2023. Prior to that, I was employed as Director, Actuarial, Actuarial Manager, and other actuarial positions by Ameritas since 1999. I have approximately 24 years' experience as an actuary or actuarial student in the dental insurance industry.

4.      As an actuary in the dental insurance industry, I have knowledge about Ameritas' dental insurance pricing and analysis of claim experience, including factors such as industry, case size, demographics, and regional adjustments; network size and fee schedules; and assessments of

Ameritas' competitiveness regarding network size and discounts via network studies done by third-party vendors. I currently supervise teams responsible for pricing and product development, network financials and claims analytics.

5.      My team provides analysis to support most areas within Ameritas' dental insurance division, including network finance, strategy, products, sales, marketing, distribution, and underwriting.

6.      Ameritas issues dental insurance coverage in all 50 States and in Washington, D.C.

7.      Ameritas directly competes for its dental insurance business with the Delta Dental Defendants in the above-captioned matter.

8.      As part of its dental insurance business, Ameritas contracts, either directly or through network leasing or sharing agreements, with dental providers in all the markets where Ameritas issues coverage.  The contracts set the reimbursement rates Ameritas will pay providers for covered goods and services provided to insured members.

9.      Ameritas' dental claims process is as follows: a dental provider renders goods and/or services to an individual insured by Ameritas and the provider then submits a claim for payment. The claim identifies the following information, including, but not limited to, the goods and services rendered, information to identify the dental provider, the insured member, the dental provider's location, the dental provider's specialty, the insured member's dental plan, the submitted charges and the date(s) of service.

10.     Ameritas' process for adjudicating dental claims includes, but is not limited to, the following: it determines whether the claim is complete, it determines whether the dental provider is in- or out-of- network, it determines what fees apply if the dental provider is in-network or what allowances apply if out-of-network, it determines what goods and/or services are covered or not

covered, or if there are any other limitations, it determines whether the member is eligible or not and it performs a utilization review. Ameritas then applies any cost-sharing features or other relevant coordination of benefits provisions and determines the amount the applicable plan will pay.

11.     Ameritas has a proprietary, confidential and competitively sensitive process for the analysis and development of reimbursement rates it agrees to pay in-network providers. Regarding this process, only dental insurance actuarial and relevant IT support employees of Ameritas have this knowledge, on a need-to-know basis. The reimbursement rates themselves are also proprietary, confidential, and competitively sensitive. Only dental insurance actuarial, provider relations, provider network recruiters and relevant IT support employees of Ameritas have knowledge of the reimbursement rates, on a need-to-know basis.

12.     Ameritas keeps its reimbursement rates and its proprietary process for setting reimbursement rates confidential. Ameritas keeps the process of setting reimbursement rates secret from competitors, such as the plaintiff providers in this matter and the American Dental Association and other dental insurers, because all of those entities could gain a competitive advantage from such information.

13.     Ameritas provides certain fields of claims data, which are proprietary, confidential and competitively sensitive, to non-competing third-party vendors who aggregate the data and generate anonymous reports for companies that respond to the third-party vendor's surveys and/or requests for information. Under their contracts with Ameritas, such third-party vendors agree to keep Ameritas' data strictly confidential, and agree not to share with Ameritas any other participating insurance companies' claims data, except in an anonymized or blinded manner. In turn, Ameritas contractually agrees not to share the work product or reports from the third-party

vendors with any third-parties.

14.     Ameritas has contracts to lease or share dental provider networks from other entities. These contracts set forth the amounts Ameritas agrees to adjudicate claims under when that the contract is used. The rates set under those contracts are confidential and proprietary, subject to the contracts.

15.     The fees applied to leased and shared providers under network leasing and sharing contracts are confidential, proprietary and competitively sensitive and only dental insurance actuarial and relevant IT support employees of Ameritas have this knowledge, on a need-to-know basis.

16.     I have reviewed and am familiar with the subpoena issued by Delta Dental of Wisconsin, Inc. ("DDWI") to Ameritas in this matter.

17.     I have reviewed Requests Nos. 1, 2, 4, 7, 8, 12, 13, 17, 21, and 23 through 27 in DDWI's subpoena in this matter. I am familiar with the types of data and documents Ameritas generates and/or possesses, if any, that would be responsive to these requests.

**Data-Oriented Requests**

18.     Request No. 1 seeks claims data that would require procedure-level data, comprising approximately 72.5 million procedures for the time period of January 1, 2014 through December 31, 2020. Access to such data are restricted to a limited number of Ameritas employees. In order to compile such procedure-level data, actuarial and IT resources would be required, and the estimated time to compile the data would be approximately 280 to 320 hours over 7 to 8 weeks, because not all information requested is in one single database. The data would have to be combined and filtered, which would require IT programming.

19.     Request No. 2 is as follows: "Documents sufficient to interpret any Structured Data

produced by You, including but not limited to data dictionaries, look-up tables, system manuals, and explanations of acronyms used in the Structured Data. To the extent that such information has changed over time during the relevant time period, provide information identifying which versions apply to each individual item of information produced in response to Request No. 1."

20.     The documents requested in Request No. 2 are proprietary, extremely confidential and competitively sensitive.

21.     Ameritas' process for setting reimbursement rates it agrees to pay dental providers and the reimbursement rates are proprietary, extremely confidential and competitively sensitive. If Ameritas' competitors or other entities with knowledge of the dental insurance industry obtained the data requested in Request Nos. 1 and 2, including but not limited to the dental providers' names, Tax ID numbers, National Provider Identifiers, the dates of service, the submitted charges, the approved amounts, the amount of submitted charges disallowed, the allowed reimbursement amounts, the amounts Ameritas paid, data dictionaries, look-up tables, system manuals, and explanations of acronyms, they would be able to determine Ameritas' reimbursement rates with all of the dental providers with which it contracts in every geographic area in the United States. This would allow Ameritas' competitors to determine Ameritas' business strategies for its dental insurance business in all of the geographic markets in which it operates. Competitors would then gain a critical competitive advantage that could undermine or ruin Ameritas' competitive position in the dental insurance market, causing irreparable harm.

**Enrollment Data**

22.     Regarding Request No. 21, I have been advised that DDWI proposed narrowing the information requested to information regarding geographic areas, in the form it is "maintained" and "generally tracked," such as management-level presentations and board and executive-level

minutes. To the extent Ameritas possesses any such management-level presentations and board and executive-level minutes, they would be shared internally only with executives or other employees who require such information for making strategic decisions for Ameritas' dental insurance business. Any such information, existing summaries or reports, or responsive materials are confidential and proprietary to Ameritas and competitively sensitive. Ameritas carefully protects such information, existing summaries or reports, or responsive materials from outside entities and competitor dental insurance companies.

23. Disclosure of the information described in Paragraph 23 above would provide competitively sensitive information to Ameritas' competitors in the dental insurance market. This would allow Ameritas' competitors to determine Ameritas' business strategies for its dental insurance business in all of the geographic markets in which it operates. Competitors would then gain a critical competitive advantage that could undermine or ruin Ameritas' competitive position in the dental insurance market, causing irreparable harm.

**Dental Loss Ratios**

24. Request No. 27 seeks "Documents sufficient to show, for each year during the relevant time period, Your dental loss ratio and/or the percentage of Premium dollars You receive that are spent paying Dental Claims and the percentage of Premium dollars that constitutes profit."

25. To the extent that DDWI seeks any information responsive to Request No. 27 other than the redacted documents Ameritas has produced in this matter in response to Request No. 27, such information would be shared internally at Ameritas only with executives or other employees who require such information for making strategic decisions for Ameritas' dental insurance business. Any such information is confidential and proprietary to Ameritas and competitively sensitive. Ameritas carefully protects such information, existing summaries or reports, or

responsive materials from outside entities and competitor dental insurance companies.

26.     Disclosure of the information described in Paragraph 25 above would provide competitively sensitive information to Ameritas' competitors in the dental insurance market. This would allow Ameritas' competitors to determine Ameritas' business strategies for its dental insurance business in all of the geographic markets in which it operates. Competitors would then gain a critical competitive advantage that could undermine or ruin Ameritas' competitive position in the dental insurance market, causing irreparable harm.

### Competition-Related Requests

27.     Regarding Request No. 17, I have been advised that DDWI seeks existing "higher-level" summaries and reports regarding "significant accounts" won and lost. To the extent that Ameritas possesses such existing "higher-level" summaries and reports or other responsive information, they would be shared internally at Ameritas only with executives or other employees who require such information for making strategic decisions for Ameritas' dental insurance business. Any such information, existing summaries or reports, or responsive materials are confidential and proprietary to Ameritas and competitively sensitive. Ameritas carefully protects such information, existing summaries or reports, or responsive materials from outside entities and competitor dental insurance companies.

28.     Disclosure of the information described in Paragraph 27 above would provide competitively sensitive information to Ameritas' competitors in the dental insurance market. This would allow Ameritas' competitors to determine Ameritas' business strategies for its dental insurance business in all of the geographic markets in which it operates. Competitors would then gain a critical competitive advantage that could undermine or ruin Ameritas' competitive position in the dental insurance market, causing irreparable harm.

29.     Regarding Request Nos. 23 through 26, I have been advised that DDWI proposed narrowing the information requested to "higher level reports and analyses," such as those at the "Board, Management, or Department level." I have been advised that DDWI seeks information regarding Ameritas' ability to enter new markets, in terms of market groups of a certain size, the requirements and geographic barriers in relation to entering a new market, the reasons for the exit of competitors in certain markets, and the effect of exit and entry from and to markets on Ameritas' reimbursement rates.

30.     Because it is a national carrier, Ameritas does not collect or possess the information described in Paragraph 29 above.

31.     To the extent that Ameritas possesses any other information requested in Request Nos. 23 through 26, it would be shared internally only with executives or other employees who require such information for making strategic decisions for Ameritas' dental insurance business. Any such information, existing summaries or reports, or responsive materials are confidential and proprietary to Ameritas and competitively sensitive. Ameritas carefully protects such information, existing summaries or reports, or responsive materials from outside entities and competitor dental insurance companies.

32.     Disclosure of the information described in Paragraph 29 above, or any other information requested in Request Nos. 23 through 26, would hand competitively sensitive information to Ameritas' competitors in the dental insurance market. This would allow Ameritas' competitors to determine Ameritas' business strategies for its dental insurance business in all of the geographic markets in which it operates. Competitors would then gain a critical competitive advantage that could undermine or ruin Ameritas' competitive position in the dental insurance market, causing irreparable harm.

**Analysis/Study-Related Requests**

33.     I have been advised that DDWI proposed narrowing Request Nos. 4, 7, and 8 to existing "higher-level" summaries and reports regarding: the factors Ameritas considers in setting reimbursement rates; the relationship between reimbursement rates and premiums; and how the reimbursement rates vary across geographic areas, and across dental plans.

34.     Regarding Request No. 4, Ameritas does not possess any existing summaries or reports as described in Paragraph No. 33 above.

35.     Regarding Request No. 7(a), Ameritas does not possess any existing summaries or reports as described in Paragraph No. 33 above.

36.     Regarding Request Nos. 4, 7, and 8, to the extent that Ameritas possesses any information, analyses, existing summaries or reports as described in Paragraph No. 33, or any other responsive materials, such information, existing summaries or reports, or responsive materials are for Ameritas' use only, and would be shared internally only with executives or other employees who require such information for making strategic decisions for Ameritas' dental insurance business. Any such information, existing summaries or reports, or responsive materials are confidential and proprietary to Ameritas and competitively sensitive. Ameritas carefully protects such information, existing summaries or reports, or responsive materials from outside entities and competitor dental insurance companies.

37.     Disclosure of the information described in Paragraph 33 above, or any other materials responsive to Request Nos. 4, 7, and 8, would provide competitively sensitive information to Ameritas' competitors in the dental insurance market. This would allow Ameritas' competitors to determine Ameritas' business strategies for its dental insurance business in all of the geographic markets in which it operates. Competitors would then gain a critical competitive

advantage that could undermine or ruin Ameritas' competitive position in the dental insurance market, causing irreparable harm.

### Network-Related Requests

38.    I have been advised that DDWI proposed narrowing Request Nos. 12 and 13, to the "highest-level analysis," with the "impact of leased networks on competition and the effect on markets and geographic areas.

39.    Ameritas does not possess any documents responsive to Request Nos. 13(b) through 13(d).

40.    Ameritas has contracts with other entities for leasing dental provider networks. The other entities determine the reimbursement rates that are paid to dental providers in the leased networks. Such contracts contain non-disclosure provisions.

41.    To the extent that Ameritas possesses any information, analyses, existing summaries or reports as described in Paragraph No. 38, or any other responsive materials, such information, existing summaries or reports, or responsive materials are for Ameritas' use only, and would be shared internally only with executives or other employees who require such information for making strategic decisions for Ameritas' dental insurance business. Any such information, existing summaries or reports, or responsive materials are confidential and proprietary to Ameritas and competitively sensitive. Ameritas carefully protects such information, existing summaries or reports, or responsive materials from outside entities and competitor dental insurance companies.

42.    Disclosure of the information described in Paragraph 38 above, or any other materials responsive to Request Nos. 12 and 13, would provide competitively sensitive information to Ameritas' competitors in the dental insurance market. This would allow Ameritas' competitors to determine Ameritas' business strategies for its dental insurance business in all of

the geographic markets in which it operates. Competitors would then gain a critical competitive advantage that could undermine or ruin Ameritas' competitive position in the dental insurance market, causing irreparable harm.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 10, 2023

Jim P. Baker, FSA, MAAA

11