IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re Delta Dental | ) | No. 19 CV 6734 |
| Antitrust litigation | ) | MDL No. 2931 |

ORDER

Defendants' motion for a protective order seeking to relieve them from responding to plaintiffs' Requests For Admission ("RFAs") is granted. Even assuming that the complexity of this multidistrict antitrust could theoretically support the sheer number of requests, *see, e.g., Sec. & Exch. Comm'n v. Rayat*, No. 21-CV-4777 (LJL), 2022 WL 1606953, at *2 (S.D.N.Y. May 19, 2022) ("sheer number of RFAs does not support issuance of a protective order in this case, which is a complex securities fraud case, that will turn in part on circumstantial evidence"), it is clear from my review of the requests—which number an eye-popping 13,041 in total[1]—and indeed from plaintiffs' own argument, that their RFAs generally do not serve the purpose contemplated by Fed. R. Civ. P.

---

[1] Plaintiffs propounded from 290 to 324 RFAs to each of the 42 defendants, for a total that is over an order of magnitude greater than the number allowed in the case just cited.

36. Indeed, the primary defect of the RFAs is not their number but the nature of the admissions they seek.

Rule 36 "is intended to allow 'parties to narrow the issues to be resolved at trial by effectively identifying and eliminating those matters on which the parties agree.'" (*Reitz v. Creighton*, No. 15 C 1854, 2019 WL 5798680, at *2 (N.D. Ill. Nov. 7, 2019) (Cole, MJ) (quoting *United States v. Kasuboski*, 834 F.2d 1345 (7th Cir. 1987)). Plainly, the parties do not agree on "facts" such as the one plaintiffs ask defendants to admit in RFP 15: that "one reason Dental Providers do not leave Delta Dental's networks in substantial numbers after fee reductions is because of Delta Dental's Market Share leverage." By their own admission, plaintiffs' goal with respect to RFAs such as this one is not to "eliminat[e] the necessity of proving at trial issues of fact on which there is mutual agreement," *id.*, but rather to lock defendants into a position on an issue where the evidence obtained in discovery is otherwise conflicting. Indeed, with respect to the example of RFA 15 above, plaintiffs point to documents and testimony that, in their view, facially establish the very fact they ask defendants to admit, then complain that defendants nevertheless "talk in circles, with a document saying one thing, an interrogatory response saying something different, and deposition testimony claiming something else altogether." Opp., ECF 620 at 14.

2

Plaintiffs insist that they "should be allowed to hold up Defendants' RFA response and the contradictory document or testimony side-by-side, demonstrating Defendants' mendacity to both the Court and to an eventual jury." *Id*. As this argument illustrates, plaintiffs' objective is far afield of "the salutary purpose of Rule 36," and instead looks much like "a game of 'gotcha[.]'" *Reitz* 2019 WL 5798680, at *2-*3 (N.D. Ill. Nov. 7, 2019). Moreover, RFA responses are unnecessary to plaintiffs' stated objective: At trial, they will have ample opportunity to point out any contradictions they observe in the evidence and to challenge witnesses who they believe testified inconsistently with other evidence.

Moreover, the scores of RFAs asking for admissions as to whether defendants have had "discussions" with other defendants on an open-ended universe of subjects at various meetings, *see*, e.g., RFA 62 ("Admit that You have had discussions with DDPA and other Member Companies at Industry Research Advisory Group meetings *on subjects including* guidelines for sharing information between Member Companies") (emphasis added) not only do not lend themselves to straightforward answers of the kind Rule 36 contemplates, but also would presumably require extensive investigation into records that have already been examined in connection with defendants' interrogatory responses covering the same ground, making them unreasonably burdensome even to the extent they can be answered.

3

*Cf. Rayat*, 2022 WL 1606953, at *2 (requests to admit that "relate to the authentication of documents or seek admission that a communication occurred on a particular date" were "not oppressive and should not be burdensome to answer"). Plaintiffs' response that such RFAs are not duplicative because they "seek simple admissions or denials as to whether such discussions took place," while the corresponding interrogatories "seek non-privileged information related to the substance of those discussions" is not persuasive.

Still other RFAs are not only ambiguous but seek sweeping admissions that go to the heart of plaintiffs' antitrust claims. Take, for example, RFA 192, which asks defendants to admit "that You have objected to the issuance by DDPA of certain SLE Agreements because You did not want other Member Companies to compete with Your Affiliates in other Enterprise states." Setting aside that recipients of this request might reasonably wonder: "which agreements?", or "what constitutes an 'objection'?", let alone "what does it mean for a corporate entity to 'want' a particular outcome?", RFAs such as this essentially ask defendants to admit that they acted with an anticompetitive purpose. That is, again, far afield of the purpose of Rule 36.

I have reviewed defendants' Exhibits B, C, and D and conclude that many of the RFAs identified therein suffer from one or more of the infirmities discussed above. Accordingly, defendants'

4

motion is granted without prejudice to plaintiffs' ability to serve requests for admission that comply with this order.

                                **ENTER ORDER:**

*[signature: Elaine E. Bucklo]*

                                **Elaine E. Bucklo**
                            United States District Judge

Dated: September 29, 2023